Turner v. Shaw.

96 22
102 120
42a 222

96 22
103 338
104 357
44a 287

96 22
107 66

96 22
108 115

96 22
109 39
109 343

96 22
120 149

96 22
127 335

96 22
133 633
66a 131

96 22
139 410

96 22
143 585

96 22
151 11

96 22
158 502

96 22
160 366

96 22
94a 2582

96 22
176 2124
95a 2344

TURNER v. SHAW, *Appellant.*

1. **Equity** : REFORMATION OF DEED : EVIDENCE.   The evidence must be clear, positive and convincing to reform a deed by inserting land therein claimed to have been omitted by mistake.

2. **Husband and Wife** : DEED FROM ONE TO OTHER.   A deed from a husband to a wife, or *vice versa*, while void at law, is good in equity.

3. **Deed** : SEPARATE ESTATE.   While a deed from a stranger to a married woman with an *habendum* clause reciting that she was to have and hold the land " to her sole and separate use " is not sufficient to create a separate estate in her, yet a conveyance in such terms directly from the husband to the wife will have the effect of creating such separate estate.

4. **Separate Estate** : CONVEYANCE BY WIFE ALONE.   A wife can convey land which is her equitable separate estate without her husband joining in the conveyance. (*Overruling Martin v. Colburn*, 88 Mo. 229).

*Appeal from Louisiana Court of Common Pleas.*—
HON. ELIJAH ROBINSON, Judge.

REVERSED AND REMANDED.

*W. H. Morrow* and *T. J. C. Fagg* for appellant.

Plaintiff's title rests exclusively upon the fact that the lots in question were conveyed by John F. Turner on the fifth day of June, 1861, to his wife, Sarah Ann Turner, and that she died intestate without ever having made a valid conveyance of her title to any one. Upon the face of this whole case it is apparent that this was a family arrangement growing out of the peculiar condition of the country and the times. It is not complicated by the rights of intervening creditors, nor by questions of subsequent purchasers or notice to third parties. The testimony of all the witnesses is to the effect that this property was intended for the two girls, and it would be strange indeed if it had been intentionally omitted in the very instruments by which these parties intended to put it in such shape as to enable John F. Turner to give it to them for a home. The testimony is abundant to show that he had already given to the plaintiff more than he was entitled to. He certainly could not have intended to leave his homestead so as to enable this son, who had received more than his share, to deprive his daughters of any portion of it. That he and his wife had all along intended to secure the property as a home to these two daughters—that in making his will shortly after the execution of the deeds in 1878, and specifically devising the two lots to the daughters, is proof conclusive that he thought they were embraced in the deeds, and he died with that conviction on his mind. There is not a fact or circumstance in connection with this case that does not show directly or indirectly the intention of the parties to include lots 519 and 520 in the two conveyances of August, 1878, and that they were simply omitted by the mistake of the person who drew the deeds, and in whose accuracy implicit confidence was placed by John F. Turner and his wife.

*John Matson* for respondent.

(1) The court would not have compelled Mrs. Turner to have reformed her deed in an action by her husband, or Mrs. Shaw, her daughter, during her lifetime, and enforced her to execute a gift or voluntary contract. Therefore it will not reform the deed in an action between their children and heirs at-law. 1 Story's Eq. Jur. [12 Ed.] secs. 164*d*, 164*e*, 433, 706*a*, 793*b*. (2) A married woman's deed cannot be reformed. *Atkinson v. Henry*, 80 Mo. 151; *Meier v. Blume*, 80 Mo. 184; *Shroyer v. Nickell*, 55 Mo. 264; *Bagby v. Emerson*, 79 Mo. 139. (3) The court found there was not sufficient evidence to sustain the equitable defense and the proof to correct a mistake must be unquestionable. *Lake v. Meachem*, 13 Wis. 355. And the evidence in this case is not sufficient to establish the equitable defense. *Berry v. Hartzell*, 91 Mo. 132; *Modrell v. Riddle*, 82 Mo. 31; *Johnson v. Quarles*, 46 Mo. 423; *Jackson v. Wood*, 88 Mo. 76; *Woodford v. Stephens*, 51 Mo. 443. And the equities are equal, "child against child." *Henderson v. Dickey*, 35 Mo. 120. (4) It is the custom of this court, in cases of equitable cognizance, to defer somewhat to the findings of the trial court. *Hendricks v. Wood*, 79 Mo. 590. This equitable defense does not change the action from one at law to one in equity. *Carter v. Prior*, 78 Mo. 222. (5) The deed from Mrs. Turner to her husband was void. *Martin v. Colburn*, 88 Mo. 229. The notary had no right to correct his certificate after his term of office expired. *Gebraith v. Gallivan*, 78 Mo. 452. (6) "Courts cannot presume anything in favor of a gift of land, although upon family considerations, further than it is followed by actual and unequivocal possession and improvements." (This property remained in the possession of Mrs. Turner at the time of her death). *Wiener v. Stephane*, 45 Mo. 565.

SHERWOOD, J.—Ejectment for an undivided one-sixth part of lots 519 and 520 in block 65, in the city of Louisiana, Pike county, Mo.

The plaintiff and defendant are brother and sister, children and heirs-at-law of their father and mother, Jno. F. and Sarah Ann Turner. The answer was a general denial, with a statement of special matters of defense set out at length, alleging that John F. Turner, deceased, the common source of title, being a southern sympathizer, and alarmed at the condition of the country, in June, 1861, executed a deed of conveyance to the property in question to his wife, Sarah Ann Turner. This deed was recorded in 1865. John F. Turner with his family, consisting of his said wife and two daughters, Mary J. Shaw and Sallie Turner, continued in the uninterrupted possession of the property up to the date of his death, in 1880. The wife died in 1882. The defendant Mary J. Shaw, widowed sister of the plaintiff, was the housekeeper and general manager of the household from the time of the acquisition of the property in 1852, until the death of her mother, Mrs. Sarah Ann Turner, in 1882 ; that on account of his fears for the safety of himself and property and for the purpose of placing all his property in such a condition that his family might have full benefit of it in case of his death or its confiscation, on June 5, 1861, in consideration of "love and respect" for his said wife, he conveyed to her all of his property, consisting of several tracts of land together with the lots in question, which were occupied as his homestead. In September, 1874, the wife, Sarah Ann Turner, in consideration of the sum of five dollars, etc., re-conveyed the same property to her husband.

In August, 1878, being advised that the last-named conveyance was ineffectual to re-invest him with the legal title to the property so as to enable him to make a proper disposition of his entire estate among his children, and especially to secure to his two daughters

aforesaid the property in dispute for a permanent home for them, he and his said wife executed a deed to the said Mary J. Shaw, by which they intended to convey all of his property, including these two lots; that on the same day, Mary J. Shaw executed her deed to her father for the same property, following the description of the last-mentioned deed. In both of these conveyances lots 519 and 520, in block 65, were omitted by the mistake of the scrivener. October 25, 1878, John F. Turner made his last will, devising these two lots to his said daughters, subject to the life estate of his wife, Sarah Ann Turner.

Sallie Turner afterwards conveyed her interest to her sister, Mary J. Shaw. It is alleged that John F. Turner in his lifetime had given to the plaintiff, by way of advancement, money and property largely in excess of his distributive share in the estate, and that Mrs. Sarah Ann Turner, at all times, up to the date of her death, assented to the propriety of making such a disposition of the property as to secure this home to the two daughters, and did all that was deemed necessary to accomplish that end. These allegations of the answer concluded by praying for such reformation of the deeds of 1878 as to include the lots aforesaid. Except denying that the plaintiff was the brother of the defendant, the reply was a general denial. The court found and gave judgment for the plaintiff.

I. This case was heard and determined solely upon the theory of the special defense set forth in the answer, that defendant was entitled to have the deeds of 1878 so reformed as to have included therein the lots in controversy. After an examination of the evidence, I am satisfied that it is not sufficient to warrant a decree for the reformation of those deeds. In order to reach such a standard of probative efficacy, the evidence must be clear, and positive, and convincing. *Modrell v. Riddle*, 82 Mo. 31, and cas. cit. Or, as Judge Story puts it,

"entirely satisfactory, and equivalent to an admission." 1 Sto. Eq. Jur. (13 Ed.) sec. 156. There is, therefore, no fault to find with the action of the lower court in this view and on this theory of the case.

II. But there is another aspect in which this case is to be regarded, one which appears to have escaped the attention of both court and counsel; it is this: The deed from a husband to a wife, or from the latter to the former, are null in law, this arising from their being regarded as one person. Very differently, however, are they regarded in a court of equity. There they may sue and be sued, contract and be contracted with, become the debtor or creditor of each other, with like effect, so far as regards equitable contemplation and rights, as if they twain had never become one flesh. *Morrison v. Thistle*, 67 Mo. 596, and cas. cit.; 1 Bishop Mar. Wom., secs. 35, 37, 713, 717. The deed of 1861, from Jno. F. Turner to his wife, while it did not vest in her a legal title to the lots in litigation, still passed to her an equitable estate.

III. And the estate thus created in the wife was an equitable separate estate. This is apparent for two reasons: (1) Because the language of the *habendum* of the deed last mentioned is: "To have and to hold unto the said Sarah Ann Turner, and to her sole use and benefit." *Morrison v. Thistle, supra.* (2) Because the deed was made directly from the husband to the wife. If the deed had been made by a *stranger* to the wife, then, a separate estate in her would not have been created, absent the necessary words; but being made to the wife by the husband, a separate estate, as against him, was the result. *Deming v. Williams*, 26 Conn. 226; *Huber v. Huber*, 10 Ohio, 371; *Steel v. Steel*, 1 Ired. Eq. 452; *Maraman v. Maraman*, 4 Met. [Ky.] 84; *McWilliams v. Ramsay*, 23 Ala. 813; 1 Bishop Mar. Wom., sec. 838.

Turner v. Shaw.

IV. It being then established that, in consequence of the deed of 1861, the wife became the owner of an equitable separate estate in the land thereby conveyed, what was the effect of her deed made back again to her husband in 1874? I can regard it as having but one effect, and that was to convey to him the same lands, that is, her equitable estate therein, which prior thereto she had been the recipient of from him. This must have been the effect of the deed of 1874, or else it had no effect at all. But it may be urged that this deed was *utterly invalid*, because it was executed by the *wife alone*. However this may be as to mere *statutory* estates, which require a joinder of husband and wife in order to their valid execution, it will not hold as to *separate estates in equity*, which the wife may *charge, mortgage, or convey without let or hindrance from her husband*. With regard to such property she is, in equity, a *feme sole*, and has the *jus disponendi*, which is the inseparable incident of ownership. By virtue of this, she charges, she incumbers, or she absolutely disposes of it, or she binds it by her parol agreements, just as any other owner would. This position is sustained by abundant authority, both here and elsewhere. *Livingston v. Livingston*, 2 Johns. Ch. 537; *Whitesides v. Cannon*, 23 Mo. 457; *King v. Mittalberger*, 50 Mo. 182; *McQuie v. Peay*, 58 Mo. 56; *Claflin v. Van Wagoner*, 32 Mo. 252; *Schafroth v. Ambs*, 46 Mo. 114; *Kimm v. Weippert*, 46 Mo. 532; *Lincoln v. Rowe*, 51 Mo. 571; *DeBaun v. Van Wagoner*, 56 Mo. 347; *Gay v. Ihm*, 69 Mo. 584; 1 Bishop Mar. Wom., sec. 853; 2 *Ib.* sec. 163; *Taylor v. Meads*, 34 L. J. [N. S.] 203.

It is upon the idea that a *feme covert*, possessed of a separate estate, may convey it, that gave origin, in the conveyances creating such estates, to clauses against alienation. 1 Bishop Mar. Wom., sec. 844. Such clauses, the invention of Lord Thurlow, amount to a

constant assertion of the power which the *feme* possesses, but for such prohibitions.　These views are contrary to those expressed in *Martin v. Colburn*, 88 Mo. 229 ; but the opinion there was by a divided court, and satisfied now that it was erroneous, we all agree to overrule that case.

V.　The husband being the possessor of the legal estate in the lots in question, and having received from his wife all the equitable estate which, by his deed of 1861, he had conveyed to her, it results that at the time he made his will, he had full power and ownership to dispose of the lots as he would ; and that no reformation of the deeds of 1878 was necessary.

We reverse the judgment and remand the cause with directions to enter judgment for defendant.　With the exception of RAY, J., absent, all concur.