Wood v. Kice.

## WOOD v. KICE *et al.*, *Appellants.*

### DIVISION TWO.

1. **Land: DEED: ESTATE TAIL.**   A deed by a grantor conveying land to one as trustee for the sole and separate use of the beneficiary, named therein and the heirs of her body with remainder in fee simple to the husband of the beneficiary, if he should survive her and she should die without leaving heirs of her body, creates an equitable estate in fee tail in such beneficiary with remainder over in fee simple to her husband surviving her and she dying without heirs of her body.

2. **Estate Tail: STATUTE.**   Such equitable estate in fee tail is by the statute (R. S. 1889, sec. 8836) cut down into a life-estate in the beneficiary with remainder in fee simple to the heirs of her body.

3. **Land: CONVEYANCE: POWER TO MORTGAGE.**   The trustee, beneficiary and her husband had the power under said deed to mortgage the life-estate of the beneficiary and the contingent remainder of the husband.

4. **———: ———: ———.**   Said deed being made on a valuable consideration and not being a gift, a clause contained therein which provided that the trustee at the request of the beneficiary and her heirs might sell the estate conveyed and hold the proceeds in trust in like manner did not exclude the power to execute said mortgage.

5. ———: CONDITIONS : DONOR: PURCHASER. `A donor has the right to impress upon his gift such conditions as he sees fit, but when one buys and pays for property it is his in equity even before a deed has passed and the grantor's right to fetter its alienation is more limited, if allowed at all.

*Appeal from Ray Circuit Court.* — HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*G. W. Lavelock, T. N. Lavelock* and *C. T. Garner, Sr.,* for appellants.

(1) The petition of plaintiff was defective, and the demurrer of defendants thereto should have been sustained. *Tapley v. Matson,* 38 Mo. 489 ; *Headlee v. Cloud,* 51 Mo. 301. (2) The defendants were not estopped from pleading the want of power to execute the mortgage in question, as a defense to plaintiff's foreclosure suit. Tiedeman on Real Property, sec. 728, p. 553 ; *Dougal v. Fryer,* 3 Mo. 40 ; *Collins v. Clamorgan,* 5 Mo. 272 ; *Bales v. Perry,* 51 Mo. 450 ; *Wolff v. Berning,* 74 Mo. 96. (3) The power to sell the premises charged with the trust, for reinvestment, did not confer the authority to mortgage it. 4 Kent's Com. [12 Ed.] sec. 331, p. 342 ; 2 Washburn on Real Property [4 Ed.] p. 655, side p. 318 ; Martindale on Conveyancing, sec. 154, pp. 116–7 ; Tiedeman on Real Property, sec. 567, p. 449 ; 1 Jones on Mortgages, sec. 129 ; *Bloomer v. Waldron,* 3 Hill, 361 ; *Ferry v. Laible,* 31 N. J. Eq. 567, 575 ; *Hannah v. Carnahan,* 32 N. W. Rep. 835 ; *Price v. Courtney,* 87 Mo. 387, and cases cited.

*Ball & Hamilton* for respondent.

(1) The petition of plaintiff was not defective and the demurrer of defendants thereto was properly overruled by the court. (2) The defendants were estopped

from pleading the want of power to execute the mortgage in question by the acts of the parties thereto. *Hereford v. Bank*, 53 Mo. 330; *Pelkinton v. Ins. Co.*, 55 Mo. 172; *Guffey v. O'Riley*, 88 Mo. 429; *Savings Ass'n v. Kehlor*, 7 Mo. App. 163; *Turner v. Timberlake*, 53 Mo. 371; *Boyer v. Allen*, 76 Mo. 498; *Hardy v. Clarkson*, 87 Mo. 171; *Praitin v. Johnston*, 23 Mo. App. 96; Bigelow on Estoppel, 492. (3) The power conferred in a trust to sell premises for reinvestment also confers power and authority to mortgage the same as the use of the power in this case was a conditional sale. *Turner v. Timberlake*, 53 Mo. 371; *Boyer v. Allen*, 76 Mo. 498; *Hardy v. Clarkson*, 87 Mo. 171; *Nichols v. Eaton*, 91 U. S. 716; *Lampert v. Haydel*, 20 Mo. App. 616; Bigelow on Estoppel, p. 510; *Harbison v. James*, 90 Mo. 411.

THOMAS, J.—The questions to be determined on this appeal grow out of the construction to be given to the following deed :

"This deed, made and entered into, by and between John C. Cates and Rutha Cates, his wife, of the first part, and Joseph S. Hughes, trustee, of the second part, and Joella Kice and the heirs of her body, of the third part, all of the county of Ray, in the state of Missouri, witnesseth : That the said party of the first part, for and in consideration of the sum of $700, to them in hand paid, by said party of the second part, as trustee as aforesaid, the receipt whereof is hereby acknowledged, have given, granted, bargained and sold to said party of the second part, as trustee as aforesaid, for the sole and exclusive use and benefit of said party of the third part, and to the heirs of her body, and to his successors, heirs and assigns forever, the following real estate situate in the southern addition to the city of Richmond, in the county of Ray, in the state of Missouri, and known and designated on the plat of said southern addition aforesaid, as lots numbered 1 and 2, to have and to hold the same, with the appurtenances thereto belonging unto

him, the said party of the second part, as trustee as aforesaid, for the uses, trusts and purposes aforesaid, and to his successors, heirs and assigns forever. The said party of the first part hereby covenanting and agreeing to and with the said party of the second part, as trustee as aforesaid, the title to said real estate, and any part thereof against the claim or claims of all persons whomsoever, they will warrant and forever defend firmly by these presents, and it is further understood and agreed, that the said party of the second part, as trustee as aforesaid, shall, whenever required by the said party of the third part, in writing, proceed to sell said real estate upon such terms as he may think proper, and shall receive the proceeds of such sale, and hold the same in trust, and in like manner, and in like effect, as said real estate, and shall whenever required, in writing, by said party of the third part, reinvest the proceeds of such sale, in such manner, and in such property, as may be directed by said party of the third part, and in like manner, and with like effect, uses and purposes, shall hold such property or effects, in which such reinvestment shall be made, as herein provided ; and it is further expressly agreed, and this conveyance is made upon condition that in the event the said Joella Kice, party of the third part, shall depart this life without children or heirs of her body, then and in such event thence in such case the property herein aforesaid shall invest in, and become the absolute property of, her present husband, Robert B. Kice, if he shall survive her death, and then be living and in being the said party of the second part, hereby covenants that he will faithfully discharge and perform the duties and obligations resting upon him as such trustee as aforesaid, in the aforegoing deed. In testimony whereof the said parties of the first and second parts have hereunto subscribed their names and affixed their seals, on this, the third day of June, A. D. 1865.

"[ Seal. ]                    JOHN C. CATES,
"[ Seal. ]                    RUTHA C. CATES."

On the seventeenth day of May, 1871, Joella Kice, Robert B. Kice and Joseph S. Hughes, trustee of Joella Kice, executed and delivered to Julia L. Temple a promissory note for $600, and, to secure this sum, they executed and delivered to said Temple a mortgage upon the property described in the foregoing deed, they signing and acknowledging the mortgage in proper form, by the names given above. On the eighteenth day of June, 1880, the said Julia L. Temple assigned and delivered said note and mortgage to the plaintiff, and he brought this action to foreclose the mortgage.

Defendants filed a demurrer to the petition, which, being overruled, they filed answers and set up as a defense, that the parties had no power to give the mortgage and that no interest passed by it. The case was tried by the court and judgment was rendered granting plaintiff the relief prayed for in his petition and defendants appealed to this court.

We will not notice the objections to the petition presented by the demurrer, for, if valid at all, they were waived by answering over and going to trial on the merits.

It is contended by appellants, that the deed by which they held the property did not authorize and empower them to mortgage it ; that the only power they had under the deed was to sell the property and reinvest the proceeds of the sale in other property to be held by the trustee on the same conditions. On the other hand appellee insists that these parties had power to mortgage the property *in fee*. The deed of Cates and wife conveyed this property to Joseph S. Hughes to hold it in trust for the sole and separate use of Joella Kice and the heirs of her body, with remainder in fee simple to her husband, Robert B. Kice, if he should survive her, and she should die without leaving heirs of her body. By the terms of the deed, Joella Kice took what, under the common law and equity jurisprudence, would have been an equitable estate in fee tail. 2 Wash. Real Prop.

[5 Ed. ] 530 ; *Farrar v. Christy's Adm'rs*, 24 Mo. 453, And being such it is cut down to a life-estate in her, .by section 8836, Revised Statutes of 1889. *Farrar v. Christy's Adm'rs, supra; Harbison v. Swan*, 58 Mo. 147 ; *Thompson v. Craig*, 64 Mo. 312.

So we find that the effect of this conveyance is to give Joella a life-estate to her sole and separate use, and to the heirs of her body a fee, and if she die without heirs of her body, to her husband in fee, if he survive her. Whatever estate the husband took under this deed is by its terms freed from the operation of the trust, when it shall become vested in law and in possession.

Having determined the extent of the estate held by appellants, let us next inquire whether they were authorized by the said deed to mortgage *any* estate in the property. We hold that they had power to mortgage the life-estate of Joella, and the contingent estate of the husband. If Joella should die without heirs of her body, leaving her husband surviving her, the grantee under a foreclosure of the mortgage in this case will take the fee that would, for his execution of this mortgage and foreclosure, have vested in him. R. S. 1889, sec. 8835 ; 2 Wash. Real Prop. [ 5 Ed.] 611.

We will now give our reasons for holding that these parties had power to convey and did convey the life-estate of Joella and the estate of her husband, in the property in dispute.

I. The deed of Cates and wife vests in Hughes title to the property described therein, to be held by him in trust for the purposes before specified. It then contains this provision: "And it is further understood and agreed,. that the said party of the second part, as trustee as aforesaid, shall whenever required by the party of the third part, in writing, proceed to sell said real estate upon such terms as he may think proper, and receive the proceeds of such sale, and hold the same in trust in like manner and in like effect as said real estate, and,

whenever required, in writing, by the said party of the third part, reinvest the proceeds of such sale in such manner and in such property as may be directed by said party of the third part, and in like manner and with like effect, uses and purposes shall hold such property or effects in which such reinvestment shall be made, as herein provided." The contention is that the power here given *to sell* the property excludes every other mode of conveyance, and several authorities and especially the case of *Price v. Courtney*, 87 Mo. 387, are cited in its support.

In the first place we wish to remark that in this discussion the fact that Cates and wife are grantors, for a valuable consideration, of this property, and not *donors*, must be constantly kept in mind. The deed they made acknowledged the receipt of $700 as the consideration of the conveyance, and, in the absence of proof to the contrary, we must conclusively presume, that this sum was paid to them by the grantees. The most of the adjudged cases cited in support of the position taken by appellants arose under wills, where the property was bestowed as a bounty. It is important to keep this point distinctly in view. A *donor* has the right to impress upon his *gift* such conditions as he sees fit; but when one buys and pays for property it is his in equity, even before he gets a deed for it, and the grantor's right to fetter its alienation is more limited, than in the other case, if allowed at all. The tendency has been in England and especially in the United States for the last hundred years to make the interchange of property, both real and personal, as free as possible, reducing the restraints upon its alienation to the *minimum*. 9 A. L. Reg. N. S. 393, 457.

If this mortgage should be held to convey the estate that Joella's lineal heirs may have in the property, the *Price v. Courtney* case and the cases cited are precisely in point; for then there would be an attempt by the

parties to mortgage not their own property but the property of another. It will be conceded that Joella Kice and her husband could not make even *a deed* to defeat the heirs of her body. The rule in *Shelley's case* was abolished in this state, as to deeds, by the statute in 1845, which statute has been continued in force every since. R. S. 1889, sec. 8838, Hence these heirs, if any, will take the property as purchasers under the deed of Cates and wife. *Phillips v. LaForge*, 89 Mo. 72; *Tesson v. Newman*, 62 Mo. 198.

Nor could Hughes affect their estate, except in the manner prescribed by the instrument vesting in him the legal title to the property. As to these heirs he was simply an agent, a trustee, and he had to pursue his authority strictly. But not so as to the life-estate of Joella and the estate of her husband. She and he owned these interests, had paid for them, and she, her husband and the trustee united in a mortgage of them to secure the payment of $600, which Joella received, if the answer of Hughes is to be taken as true. He says he signed the note simply as trustee of Joella Kice and not otherwise, and incurred no liability, except in that capacity, and there is no pretense that he got or used any of the $600, borrowed. The husband and wife received the money and appropriated it to their own use. The courts have made a marked distinction between the execution of a naked power and the execution of a power coupled with an interest, or where the beneficiary joins in the instrument with the trustee in the execution of the power. In the former case *one* person assumes to dispose of what belongs to *another*, and he is held, and rightfully held, *to the terms* prescribed in the deed under which he holds the property, and by virtue of which he assumes to alienate it. *Price v. Courtney*, *supra*, and cases cited. In the latter case the *owner* assumes to dispose of *his own* property, and the rule is, that he can alien it in any way that he sees fit, unless

his power to alien it is negatived in the deed itself. 9
A. L. Reg., pp. 393 and 457; *McDowell v. Brown*, 21
Mo. 57.

All the cases cited by the appellants and all we have
been able to find make the distinction we have noted
and all involved questions arising, not between the
parties to the deeds, but between one of the parties to
the deeds and strangers. Here all the parties who
executed the mortgage are before the court, and *they*
assert that *they* had no power to make the mortgage.
They defend this action for the heirs of Joella Kice.
This they cannot do. These heirs are not before the
court, nor can their interests be affected by any judg-
ment of the court in this case. Plaintiff asks to have
the interest conveyed by the mortgage foreclosed and
sold for the payment of his debt. This he is clearly
entitled to.

2. Let us examine the deed in question and see
whether the granting of the power to Hughes to sell the
fee and reinvest the proceeds negatived his power to
mortgage the estate of the husband and the life-estate of
Joella, when she and her husband join in the mortgage
with him. That these parties would have had the power
to convey these interests, if the affirmative power to
sell the fee had not been inserted, will no doubt be con-
ceded. Then did the insertion of this affirmative power to
sell the fee take away the power to mortgage the estate
of the husband and the life-estate of the wife? Mark
the language conferring this power: "And it is fur-
ther understood and agreed, that the trustee should,
when required by Joella in writing, have power to sell
and reinvest the proceeds." Without this affirmative
power to sell *the fee* no one of these parties, nor all of
them, could have sold it. The *grantors* do not pretend
to confer this power, but "*it is further understood and
agreed*" that this power shall be conferred. "*Under-
stood and agreed*" between whom? No doubt, between
all parties to the deed. The grantees had bought and

paid for the property. It was conveyed to a trustee to hold in trust for the wife and heirs of her body, and it, no doubt, then occurred to them that the title had been put beyond their control and this power to sell and reinvest was inserted in the deed by the consent of the grantees, not as a limitation of their power of alienation, but as an enlargement of it.

As to "the heirs of Joella's body," we think the power to sell negatives the power to mortgage, but as to the estate of the husband and the life-estate of the wife, we cannot see how the conferring of an *additional* power could negative an *existing* power. Where the conveyance creating a sole and separate estate in a married woman specifies in detail the mode of disposition, she is not necessarily restricted to that mode. She may adopt any mode known to law, unless affirmatively confined to the one named. *Green v. Sutton*, 50 Mo. 186; *Siemers v. Kleeburg*, 56 Mo. 196; *Kimm v. Weippert*, 46 Mo, 532; *Richeson v. Simmons*, 47 Mo. 20.

The wife in this case having a separate estate in the property could convey it without her husband joining in the deed. *Turner v. Shaw*, 96 Mo. 22; and could even bind it by giving a note. *Turner v. Shaw, supra*, and cases cited. But the husband, wife and trustee all united in the mortgage in this case, and it was duly acknowledged by them all, and hence no question can arise as to the right to give the mortgage, nor as to the mode of its execution.

3. Suppose we would hold this mortgage utterly void as to the husband's estate and Joella's life-estate, and that no interest in the property was conveyed by it, what would be the effect? We would give Joella and her husband the $600 borrowed and then give *them* the land too. The *identical* parties who made the mortgage, and received and used the money, are here asking the court to declare that *they* had no power to make it, and to let *them* keep the money they got by executing the mortgage and, at the same time,

turn the property over to them also. We feel that such a ruling as that would be most unjust and inequitable. It is unjust enough to hold that the mortgagee got only the husband's estate and the life-estate of Joella in this property, but to hold that he got nothing, would be iniquitous. He may lose the fee; but, if he does, it will be simply because he was mistaken as to the power given these parties. The deed was made in part at least, for the heirs of the body of Joella, and, if she leaves any, they will need protection as well as the other parties. They will be innocent. They had nothing to do with the mortgage, and, as to them, the trustee had only a naked power and he could execute the power by the mode only that was prescribed by the deed creating the trust.

Our conclusion of the whole matter is that the mortgage in this case conveyed the life-estate of Joella absolutely and the estate of her husband, subject to the contingencies specified in the deed. Judgment affirmed. All of division number 2 concur.