CLARKSON *et al.*, *Appellants*, v. CLARKSON.

Division One, December 10, 1894.

1. **Estate Tail:** "BODILY HEIRS": DEED: DEVISE. A conveyance or devise to a person and the heirs of his body creates an estate tail, and there is no substantial difference in the terms "heirs of his body" and "bodily heirs."

2. ———: ———: ———: ———: STATUTE. By the provisions of Revised Statutes, 1855, chapter 32, section 5, every conveyance or devise, which would previously have created an estate tail, thereafter vested in the grantee or devisee a life estate only which passed upon his death to his child or children in fee and the part of any child who was dead vested in his or her issue; if the grantee or devisee left no issue, the estate would vest in his heirs.

3. ———: ———: ———: ———: ———. Where such life tenant at his death left no children, but left surviving him his widow, his brothers, sisters, and children of his deceased brothers and sisters, such brothers and sisters and children of his deceased brothers and sisters would be entitled to the estate.

4. **Appellate Practice.** A party not appealing will not be heard to complain, upon appeal, of the rulings of the trial court.

*Appeal from Mississippi Circuit Court.*

REVERSED AND REMANDED.

*Russell & Deal* for appellants.

(1)   The deed to "John Clarkson and his bodily heirs" at common law would have created an estate tail. 1 Wash. on Real Prop., 102, 104, 105; Tiedeman on Real Prop., sec. 47; 1 Chitty's Blackstone, side pp. 109–115; *Phillips v. Laforge*, 89 Mo. 72; *Burris v. Page*, 12 Mo. 358. Such estate tail was reduced by statute in force at that date to estates for life in the

first grantee, with remainder in fee to his children, and, in case any of his children should die without issue, then to their heirs. R. S. 1855, p. 355, sec. 5. But John Clarkson died without issue, and at common law the title reverted to the heirs of the grantor. Tiedeman, secs. 385, 387; Washburn on Real Property, secs. 737, 738. No statute had ever been passed changing the common law, where the instrument showed a clear intention to create a life estate. R. S. 1855, p. 355, sec. 2. The question, as we view it, simply reduces itself to this: Does "his bodily heirs" mean "heirs of his body?" It is a mere transposition of the language, and certainly, to the common, ordinary understanding, is an equivalent expression. The words of procreation of the body may be supplied by equivalent expressions. Coke, Litt. 20*b*. (2) The circumstances all conduce to strengthen the theory that a life estate was intended to be deeded. (3.) The case of *Donnell v. Mateer*, 5 Iredell, 9, held that "bodily heirs" were words of limitation and not of purchase. This does not militate against our position, but, when properly considered, adds strength to it. The statute of that state had abolished estates tail and made all such fee-simple estates. That case grew out of a bequest of personal property, and in its opinion the court cited the following cases decided by the same court: *Allen v. Pass*, 4 Dev. & Bat.; *Ham v. Ham*, 1 Dev. & Bat. 598; *Floyd v. Watson*, 4 Dev. & Bat. 478. See, also, *Coon v. Rice*, Iredell, 217. These cases hold that "heirs of the body" are words of limitation, also; thereby, in effect, holding that these two expressions are equivalent. That case simply decided that the words, "bodily heirs," were words of limitation, which was, in effect, holding that at common law this language would have created an estate tail. At common law, words of limitation were necessary to create an

estate tail, and any words which designated what class of heirs were to take as "heirs of his body," and equivalent expressions, were words of limitation. Words of purchase were not necessary to the creation of an estate tail at common law. "In the creation of an estate tail words of limitation must be used which indicate clearly what heirs are to take. The usual form of limitation is to one, and the 'heirs of his body,' but any other equivalent expression would be sufficient, provided the word 'heirs' was not omitted." Tiedeman, sec. 47; 1 Washburn on Real Prop., 104, 105. (5) If this deed conveyed to John Clarkson a life estate only, Sarah Clarkson, who held under him, could have no greater interest, and at the death of John her title expired; and these plaintiffs are entitled to recover.

*W. N. Randolph, James A. Boone* and *Harry J. Cantwell* for respondent.

Appellant makes an assignment of errors, for some of which he had not laid the proper foundation by request for instructions or findings in the trial below. The only errors assigned which should be here reviewed are those recited in motion for new trial. The appellant having elected to stand on his action of ejectment, all evidence which tended to reform the deed, or to show the intent of the grantor by oral testimony was properly excluded. *Jones v. Shepley*, 90 Mo. 307. James Clarkson, being a party to this suit, and his right of action being derived to him from Jabez Clarkson, who would, if living, be disqualified—(because John Clarkson, one of the original parties to the contract in issue was dead) was incompetent to testify in his own favor. R. S. 1889, sec. 8918. And James Clarkson's testimony as to the intent of the grantor would have been

incompetent under any circumstances. The remaining assignment is that the verdict of the court is without testimony to sustain it. No declaration of law and no findings of fact having been requested, the presumption is in favor of the action of the trial court, and, if the judgment of the lower court may be supported on any theory from the evidence, it should stand. *Mead v. Spalding*, 94 Mo. 43; *Kreider v. Milner*, 99 Mo. 145. The words "bodily heirs," as used in the deed, created a fee simple and not an estate tail. R. S. 1855, sec. 2, chap. 32, p. 355; *Donnell v. Mateer*, 5 Ired. (N. C.) 9; *Mitchell v. Simpson*, 10 S. W. Rep. 372. Even though the words "heirs of the body" had been used in the deed, the statute then in force destroyed the estate tail and vested the remainder in the "children" of John Clarkson, and under the word "children," an adopted child may take. R. S. 1855, sec. 5, chap. 32, p. 355; *Moran v. Stewart*, 26 S. W. Rep. p. 962; *Fosburg v. Rogers*, 114 Mo. 122. "Reversion" is odious to the policy of our laws and institutions and is not a necessary incident to the statutory estate. Washburn on Real Property, sec. 16, book 1, chap. 4.

BLACK, P. J.—This is an action of ejectment brought by James Clarkson and others against Sarah Clarkson, the widow of John Clarkson, to recover about one hundred acres of land in Mississippi county. Jabez Clarkson, by a warranty deed, dated the ninth of November, 1858, conveyed the land to "John Clarkson and his bodily heirs." Jabez died in two or three days thereafter. John was a son of Jabez. John resided on the land at the date of the deed, and continued to reside thereon until 1890, at which date he died, leaving the defendant as his widow. At the date of the deed from Jabez to John, the latter had no children, and none were born to him after that date.

The plaintiffs are brothers and sisters and children of deceased brothers and sisters of John Clarkson.

The record contains the following further recital: "Defendant offered in evidence a deed of adoption, by John and Sarah Clarkson, adopting Ray Conyers, dated July 11, 1887. Plaintiff objected as immaterial and the court excluded it."

The first question to be determined is, whether the words "bodily heirs," as used in this deed, created an estate tail, or a fee simple. A conveyance or devise to a person and the heirs of his body creates an estate tail. *Chiles v. Bartleson*, 21 Mo. 344; *Phillips v. LaForge*, 89 Mo. 72; *Wood v. Kice*, 103 Mo. 329. Says Washburn: "The statute *De Donis* was regarded by the courts as a remedial one, and, instead of confining it to the precise cases enumerated in it, they regarded these as put by way of example." 1 Wash. on Real Prop. [5 Ed.] p. 100. The same author says: "It is, therefore, requisite, in order to create such an estate, that, in addition to the word heirs, there should be words of procreation which indicate the body from which these heirs are to proceed, or the person by whom begotten. If this is done, it may not be necessary to make use of the words 'of the body,' if, by the description, it appears that they are to be the issue of a particular person. A general limitation to a man and the heirs of his body is sufficient, it being immaterial of whom begotten." *Ibid.*, 107; Tiedeman on Real Property [Enlarged Ed.], sec. 47.

Sometimes an estate tail is created by implication. Thus, it was said in *Farrar v. Christy*, 24 Mo. 468, "there is a universal concurrence among law writers that a gift to a man and his heirs, and, if he shall die without heirs of his body, then to others, conveys an estate tail." There is no substantial difference between

the words "heirs of his body" and "bodily heirs." They are all words of limitation, and not of purchase, and the latter have the same meaning as the former, unless there is something in the instrument to show that the donor used them in some other than their technical sense.

In the cases of *Righter v. Forrester*, 1 Bush, 278, and *Mitchell v. Simpson*, 10 S. W. Rep. (Ky.) 372, the words "bodily heirs" were used in wills and were construed to mean children, when taken in connection with other parts of the instruments. These cases both proceed on the proposition that "bodily heirs" are proper words of limitation, and create an estate tail, which the statute of that state converts into a fee simple, unless it appears from the entire will that the testator did not use the words in their technical sense. So it was said in *Donnell v. Mateer*, 5 Ired. Eq. (N. C.) 9: "But there is nothing in the context here, to control the technical meaning of the term, 'bodily heirs;' and, therefore, we are obliged to receive them in that sense, as meaning that class of persons who, by law, take property by inheritance or succession from another. Thus understood, they are not words of purchase, but of limitation, in dispositions of this kind, as well as in conveyances of land." These cases are all authorities for, instead of against, the proposition that the words "bodily heirs," as used in the deed in question, create an estate tail; for there is not a word in the whole deed to show or indicate that the donor used them in any other than their technical sense. Our conclusion is that this deed created an estate tail. Our statute converted that estate, as soon created, into a life estate in John Clarkson, remainder in fee to his children.

The next question is, who are the present owners of the land. This case was tried by the court without

a jury, and no instructions were asked or given, and the court made no finding of facts. There is evidence in the case from which it may be inferred John Clarkson had a child or children by his first wife, and that he was living with his second wife, the defendant here, at the date of the deed. It is, however, conceded that he had no children living at that date, and that no children were born to him after that date. On this state of facts the plaintiffs insist the title passed to them. This question must be determined by section 5, chapter 32, Revised Statutes, 1855, the statute in force when the deed was executed. It provides that every conveyance or devise which would have created an estate tail under the statute of the thirteenth Edward First "shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in, such premises, and no other, as a tenant for life thereof would have by law; and, upon the death of such grantee or devisee, the said lands and tenements shall go, and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common, in fee; and if there be only one child, then to that one, in fee; and if any child be dead, the part which would have come to him or her, shall go to his or her issue; and if there be no issue then to his or her heirs."

This statute disposed of the entire estate conveyed by the deed. It vested in John Clarkson a life estate, and no more. As he had no children or their descendants living, either at the date of the deed or at his death, the remainder vested, according to the last clause of the section of the statute just quoted, in his brothers and sisters and the heirs of those who were dead, he having no father or mother living at his death.

The defendant makes the point that the adopted

child of John and Sarah Clarkson was a child within the meaning of the statute just quoted, and hence the remainder passed to the adopted child. It is now sufficient to say no such question is presented by this record. The deed of adoption was excluded by the trial court on the objection of the plaintiffs who are the appellants. The defendant took no appeal and is not, by the record, here complaining of any ruling of the trial court. The judgment is reversed and the cause remanded. All concur.