Rozier v. Graham.

ROZIER v. GRAHAM *et al.*, *Appellants.*

Division Two, December 6, 1898.

1. **Specific Performance**: CONTRACT TO PURCHASE LAND: PERFECT TITLE. By written contract defendant agreed to convey to plaintiff certain lots, "the title to be perfect and to be conveyed by warranty deed." *Held*, that the plaintiff was entitled to a title which would enable him to hold the land in peace and which contained no flaw that might disturb the property's market value, or subject him to annoying lawsuits. Until such title was tendered the defendant could not compel specific performance.

2. ———: ———: ———: CONTINGENT REMAINDER. Defendant's title was as follows: In 1845, one Burk conveyed the land to Sarah Stillwell, the *habendum* clause being, "to have and hold the above described lot, with all the rights and privileges to the same belonging, unto the said Sarah Stillwell and the heirs of her body forever." The title of the said Sarah, who is still living, by *mesne* conveyances lodged in defendant, and Sarah's three children, the oldest a son, the other two daughters, after they arrived at legal age also conveyed the lots by warranty deed to defendant. *Held*, that the defendant did not have a perfect title to the land, but only a conditional or contingent estate.

3. ———: ———: ———: HEIRS. No one is an heir of a living person.

4. ———: ———: ———: HEIRS OF ONE'S BODY: PRIMOGENITURE: ELDEST SON. Where the conveyance is to one and the heirs of his body, the estate is not cast, by the statute abolishing entails, upon the eldest son of the first taker, but upon the heirs general of such life tenant. The words, "according to the course of the common law," do not mean that the eldest son is to take the estate to the exclusion of the other heirs of such life taker.

5. ———: ———: ———: ———: POSSIBILITY OF ISSUE EXTINCT. Where a deed is made to one and the heirs of her body, the law will not presume the possibility of issue extinct so long as she lives, and it can not therefore be determined during her life who her heirs are.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

AFFIRMED.

*Everett W. Pattison* and *Benj. J. Klene* for appellants.

(1) The conveyance of Burk to Stillwell gave the latter an estate tail general at common law. Sharswood's Blackstone, book 2, p. 214; 1 Wash. Real Prop. [4 Ed.], sec. 53; *Clarkson v. Clarkson*, 125 Mo. 381; *Reed v. Lane*, 122 Mo. 311; *Farrar v. Christy*, 24 Mo. 453; *Bone v. Tyrrell*, 113 Mo. 175; *Gourley v. Woodbury*, 42 Vt. 393; *Blake v. Stone*, 27 Vt. 475; *Butler v. Huestis*, 68 Ill. 594; *Frazer v. Supervisors, etc.*, 74 Ill. 282. (2) The statute in force when the deed was executed destroyed the fee-tail estate and gave a life estate to the donee in tail, and a remainder in fee-simple to the person, not persons, to whom the estate tail would, on the death of the first donee or devisee in tail, first pass, according to the common law, by virtue of the deed. *Farrar v. Christy*, 24 Mo. 453; *Clarkson v. Clarkson*, 125 Mo. 381. (3) The remainder was a vested one; the entire estate passed presently out of Burk to Sarah Stillwell, remainder to her mother, vesting on his birth in George F. Keetley. *Farrar v. Christy*, 24 Mo. 453; *Bone v. Tyrrell*, 113 Mo. 175; *Clarkson v. Clarkson*, 125 Mo. 381. (4) According to the rule of common law, George F. Keetley, the eldest and only son of Sarah Stillwell, solely and not equally with his sisters, was upon his birth entitled to the remainder under Burk's deed, as the person to whom it would first pass, according to the common law. Sharswood's Blackstone, book 2, p. 214; 1 Wash., Real Prop. [4 Ed.], sec. 53; *Corbin v. Healy*, 20 Pick. 514; 4 Kents' Com. [Ed. 1889], p. 375; Guthrie's Appeal, 37 Pa. St. 9. (5) Where not abrogated by statute, the common law of England furnishes the rule for the determination of litigated questions. *Peacock v. Smart*, 17 Mo.

402; R. S. 1835, p. 378, sec. 1; *Ib.*, p. 119, sec. 5; *Evans v. Folks*, 135 Mo. 397. (6) Neither will it do to say that the spirit and policy of our law, as expressed in our statute of descents and distributions, is against the doctrine of primogeniture, since that statute applies to and effects only estates of inheritance. R. S. 1889, sec. 4465; R. S. 1835, p. 222; *Corbin v. Healy*, 20 Pick. 514; *Wright v. Thayer*, 67 Mass. 284; *Jenks v. Backhouse*, 1 Binn. 91; Guthrie's Appeal, 37 Pa. St. 9; *Reinhart v. Lantz*, 37 Pa. St. 491.

*John H. Drabelle* and *Edward S. Robert* for respondent.

(1) Under the statute, Revised Statutes 1889, section 8836, the fee may vest and be again and again divested until the death of the donee, when the fee-simple given in lieu of the fee-tail finally vests. *Farrar v. Christy*, 24 Mo. 469; *Harbison v. Swan*, 58 Mo. 147; *Wood v. Kice*, 103 Mo. 329; *Thompson v. Craig*, 64 Mo. 312. (2) The interest of the heir is contingent and was at the common law, both with respect to fees-simple and fees-tail. *Farrar v. Christy*, 24 Mo. 469; *Rodney v. Landau*, 104 Mo. 251; *Emerson v. Hughes*, 110 Mo. 627; *Godman v. Simmons*, 113 Mo. 122; *Brown v. Rogers*, 125 Mo. 397; *Brown v. Fulkerson*, 125 Mo. 403; 1 Wash. Real Prop. 79; 2 Wash. Real Prop. pp. 238, 240. (3) *Nemo est haeres viventis*. 1 Wash. Real Prop. 79; 2 Wash. Real Prop. 240; *Emerson v. Hughes*, 110 Mo. 627. (4) The purpose of the statute was to break up all entails. *Farrar v. Christy*, 24 Mo. 469; *Hunter v. Patterson*, 142 Mo. 310. (5) The fee passes to the children, if any are born, where a fee-tail would have existed at common law. *Farrar v. Christy*, 24 Mo. 469; *Harbison v. Swan*, 58 Mo. 147; *Horsley v. Hilborn*, 44 Ark. 458; *Lehndorf v. Cope*, 122 Ill. 329.

(6)   The gift to Sarah Stillwell's mother was void, as the gift to Sarah and the heirs of her body exhausted Burk's power to convey. *Brown v. Rogers*, 125 Mo. 399.   (7)   The law presumes that one may have children as long as he or she lives. 1 Wash. Real Prop. 83. (8)   In a suit for specific performance the court will not pass on a doubtful title, as it can not get all the parties before it. Pomeroy, Specific Per. of Cont. 278; Waterman, Specific Per. 546; Batten on Specific Per. 117; *Pyrke v. Waddingham*, 10 Hare, 1.   (9)   A chancellor will not compel a purchaser to accept a title that has even a cloud on it, much less a doubtful one; it must be marketable. *Hymers v. Branch*, 6 Mo. App. 511; *Gerhart v. Peck*, 42 Mo. App. 652; *Vought v. Williams*, 120 N. Y. 253; *Jeffries v. Jeffries*, 117 Mass. 184; *Sohier v. Williams*, 1 Curtis, 479; *Wellman v. Dismukes*, 42 Mo. 105; *Thompson v. Craig*, 64 Mo. 316.

GANTT, P. J.—This was originally a suit in equity by Rozier, the plaintiff against Mrs. Graham for the specific performance of a contract of sale of a parcel of unimproved real estate in the city of St. Louis, lying in block number 247, having a front of fifty feet on the west side of Second street, being the northwest corner of Second and Mullanphy.   The contract was in writing, and among other stipulations it was agreed that the "title of said property shall be perfect and to be conveyed by warranty deed, free from liens and incumbrances except taxes of 1894 and thereafter."   Thirty days' time was allowed to investigate the title.   Being advised that Mrs. Graham had only an undivided interest in a life estate, Rozier filed his bill to compel her to convey that, and accept the ascertained value of her interest in the life estate.   Mrs. Graham claimed she owned the fee-simple and filed her cross-bill to require

Rozier to accept the title to the lot and pay the whole purchase price.

Rozier dismissed his bill and the case was tried on Mrs. Graham's cross-bill and plaintiff's reply thereto. Pending the litigation Mrs. Graham married Thomas J. Chewning. The St. Louis Trust Company was Mrs. Graham's trustee, and upon her marriage was made a party. Mrs. Graham subsequently died and the trust company conveyed the lot in suit to her daughter, Mrs. Fannie Mullen, who has been substituted for her mother.

The facts are substantially these: On April 17, 1845, a deed was made by William L. Burk to the lot in suit. The *habendum* clause of that deed is as follows: "To have and to hold the above described lot, with all the rights and privileges to the same belonging, unto the said Sarah Stillwell and the heirs of her body forever, with this express limitation that if the said Sarah Stillwell shall die without issue then the title to the above lot to be vested in the mother of the said Sarah and the heirs of her body forever."

At the time of the making of that deed Sarah Stillwell's mother, named Elizabeth, was living. She has since died, being at the time of her death a widow, leaving as her sole issue Sarah Stillwell, her only other children having died in infancy, none of them having attained the age of three years.

Sarah Stillwell was twice married. By her first husband, Talbot Koehler, she had no children. By her second husband, Henry Keetley, she had four children. The first was George Francis, born in 1867; the second, Louisa, born in 1870; the third, Elizabeth, born in 1873. The fourth child was stillborn.

In 1869 a suit in partition was commenced among the heirs and representatives of William L. Burk, the grantor of Sarah Stillwell, which embraced the

property in controversy, and to which Sarah Stillwell, as well as Mrs. Graham, were parties. A sale was had in this proceeding, at which one Hartman became the purchaser, and his title subsequently passed to the State Bank of St. Louis.

Mrs. Graham, at the date of her contract with plaintiff, held by *mesne* conveyance the title of Sarah Stillwell, as also the title of the State Bank, and held also a warranty deed from all three of the children of Sarah Stillwell, to wit, George Francis, Louisa and Elizabeth, all of whom were of age when the deed was executed.

Upon this state of facts as shown at the trial the court below made a finding that the contract of sale in question "can not be performed by the said Margaret L. Chewning (formerly Graham) and the court doth, therefore, order, adjudge and decree that the same be hereby canceled and for naught held."

Other facts may be noted if necessary in the discussion of the case.

I.  It is conceded by both sides to this controversy that under the deed of William Burk of April 17, 1845, Sarah Stillwell, under the Revised Statutes of 1835, page 119, took an estate for her life only, whereas at common law she would have taken a fee-tail, but the learned counsel are by no means agreed as to where the fee-simple goes after the life estate, nor as to its vesting. Counsel for appellant, Mrs. Mullen, insist that under the Burk deed and the statute abolishing entails Sarah Stillwell took a life estate only and that George Keetley, the eldest son of said Sarah by her husband, Henry Keetley, upon his birth became seized of a vested remainder by the common law rules of descent as her eldest son.

Counsel for respondent Rozier assert, on the contrary, that until the life estate drops, that is to say,

until the death of the first donee it can not be told to whom the estate in fee would in the language of the statute of 1835 *"first pass according to the common law"* by virtue of the grant or devise; that the interest of him who is to take after the life tenant is *contingent* until the death of the life tenant, and until her death it can not be said in whom the estate would next lodge because as no one is heir of a living person, the person who is to take as heir can not be ascertained until the death of such person.

If counsel for Mrs. Mullen are right in their contention, as Mrs. Graham received a deed from George Keetley and a deed in partition to Mrs. Keetley's interest, she acquired the whole title unless the failure to make two of Mrs. Burk's children parties to the partition suit in 1869, left their shares or one fourth of Mrs. Keetley's life estate outstanding. On the other hand, it is quite evident that as Mrs. Keetley is still alive if it is true that it is still unknown who her heirs will be at her death, a court of equity will not force a doubtful title upon Rozier.

It will be observed that counsel for the Graham interest announces that the doctrine of primogeniture still obtains as a rule of property in Missouri, and not only that, but immediately upon the birth of the eldest son of the donee the fee vests in him *not subject to be divested.*

It may or may not be necessary in this case to decide what the law is as to the first proposition. The argument is founded upon the assumption that George Keetley is necessarily the person to whom the estate-tail would first pass according to the common law.

Is this true? It appears in the evidence that Mrs. Keetley had three living children, George, a son, and two daughters, Louisa and Elizabeth. As a basis of further discussion it may now be stated that counsel

for Rozier unquestionably are right in insisting that the common law maxim *"nemo est haeres viventis"* is still the law of Missouri.   Now conceding that George, being the eldest son, would by the common law be the heir apparent, still it is only apparent because if he should die childless, before his mother Mrs. Keetley died, his two sisters, Louisa and Elizabeth, would be the first takers jointly "according to the common law."

Again suppose George dies before his mother leaving a son, this son will take at the death of his grand-mother "according to the common law."   But again, if George and his two sisters should die child-less, his mother may have another child or children, and the law will not deem the possibility of issue extinct as long as she lives.   1 Wash. Real Prop. [5 Ed.], p. 109, sec. 36.   To avoid the force of these po-sitions that it can not be certainly determined who will take the fee-simple until the death of the tenant in possession, counsel insists that the presumption that Mrs. Keetley may yet have other children is a sophis-tical and casuistic fiction, and rejects it, and as to the other contingencies of death supposed, maintains that the estate *vests absolutely under the statute* and is not subject to be divested by death or subsequent births. However absurd and unreasonable it may appear to counsel that the law will not deem the possibility of issue extinct as long as Mrs. Keetley lives, the doc-trine is very old and has stood unshaken too long as a rule governing the devolution of property to be now questioned.

The entail in this case is a general fee-tail, being to heirs of Mrs. Keetley's body in contradistinction to a special fee-tail which limits a remainder to heirs male, or female, or begotten of a particular person. 2 Sharswood's Blackstone, p. 214; 1 Wash. Real Prop. [5 Ed.], p. 108, secs. 33 and 34; *Clarkson v. Clarkson,*

125 Mo. 381; *Reed v. Lane*, 122 Mo. 311; *Farrar v. Christy*, 24 Mo. 453; *Bone v. Tyrrell*, 113 Mo. 175.

The entail, then, being to the heirs general of the body of Mrs. Keetley, so long as she lives she is presumed capable of bearing still other children, and the very definition of the word heir is one upon whom the law casts his ancestor's estate immediately on the *death* of his *ancestor*. Coke Litt. 70; 2 Bla. Comm. 201.

It follows that a contingency exists as to the heirs of Mrs. Keetley, and it can not at this time be foretold who will be her heirs at her death. Says Mr. Washburn (2 Wash. Real Prop. [5 Ed.], p. 611, sec. 4): "If the contingency is in the person who is to take, as when the remainder is limited to the heirs of one now alive, there is no one who can make *an effectual grant* or devise of the remainder." Neither Mrs. Graham nor her daughter, Mrs. Mullen, could make a valid conveyance of the fee-simple. *Godman v. Simmons*, 113 Mo. 122; *Reed v. Lane*, 122 Mo. 311.

But it is equally well settled law in this State that though a fee may vest as a contingent remainder, it may be divested upon contingencies, until the death of the life tenant, at which it vests finally. *Farrar v. Christy*, 24 Mo. 469; *Wood v. Kice*, 103 Mo. 329.

It might prove interesting to examine and discuss at length the exceedingly ingenious and plausible argument of the able counsel for Mrs. Mullen that our statute of 1835 docking entails has been the means of preserving the common law rule of descent of primogeniture, but having disposed of the only two grounds upon which his contention could possibly exist in this case, the stress of work forbids that we should enter upon such a discussion. While it is somewhat startling, we do not think it is altogether new, and we feel justified in saying that however plausible the theory evolved from the mere words of the statute, no such

construction ever has been given that statute in this State, or ever will be.    There are no mourners for the doctrine of primogeniture in this State.

Finally, in *Mitchner v. Holmes*, 117 Mo. 185, we adhered to the long established doctrine that every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful suits be brought against him and probably take from him or his heirs land in which his money is invested.    He has the right to a title which would not only enable him to hold his land, but to hold it in peace, and if he wishes to sell to be reasonably sure that no flaw will disturb its market value.    In suits for specific performance, courts of equity will not compel him to take a less satisfactory title.    In view of the contingencies in the title of Mrs. Mullen, the circuit court very properly ruled that Rozier should not be compelled to accept the title tendered, and was under his contract entitled to a return of his earnest money. The decree is affirmed.

SHERWOOD and BURGESS, JJ., concur.