ELISHA MORRILL, PLAINTIFF IN ERROR, *v.* JOHN CONE AND CARLOS J. CONE.

Although under a power of attorney, authorizing a conveyance of lands, the legal title does not pass when the attorney executes a deed, unless the sale was made in accordance with the requirements of the power, yet in this case, where the deed executed by the attorney was apparently within the scope of his power, and admitted the payment of the consideration, it was *prima facie* evidence of the conveyance of the legal title.

The evidence offered to show that the power of attorney had not been complied with, was not sufficient in an action of ejectment to recover the lands after a long period of time had elapsed, and the lands had been repeatedly sold.

THIS case was brought up by writ of error from the Circuit Court of the United States for the northern district of Illinois.

It was an ejectment brought by Morrill, a citizen of New Hampshire, to recover from John Cone and Carlos J. Cone the southwest quarter of section thirty-six, township eleven north, range one west, in the county of Warren, and State of Illinois.

Upon the trial, the plaintiff exhibited his title as follows, viz:

1. A patent for the land in question from the United States to Benjamin Abbott, dated April 9th, 1818.

2. A deed for said land from said Abbott to the plaintiff, dated January 9th, 1855.

3. The plaintiff also put in evidence, by way of precaution, a deed to himself from one Nathaniel Abbott, dated October 26th, 1838.

The defendants, in order to show that the title had passed out of the Abbotts to grantees, under whom they made defence, at a time prior to the inception of the plaintiff's title, read to the jury—

1. A deed for said land from Benjamin Abbott to Nathaniel Abbott, dated May 9th, 1818.

2. A power of attorney from Nathaniel Abbott, John D. Abbott, and Joseph Low, to Abraham Beck, dated July 14th, 1820, authorizing him to sell and convey "all those certain lots, pieces, or parcels of land named and described in the annexed list or schedule, situate, lying, and being in the tract appropriated by acts of Congress for military bounties, in the State of Illinois, and which were severally granted to the persons whose names are annexed to each lot or parcel of land," with this proviso written immediately after the attesting clause, "provided, however, that the condition is understood to be such, that our said attorney is to take sufficient security on real estate for all the above lands which may be sold on a credit."

The annexed schedule contained sixty-four quarter sections, and among them the land in suit. Acknowledged February 12th, 1821, and recorded July 30th, 1821.

As the decision of the case turned upon the execution of this power, and the admissibility of the evidence offered to prove its defective execution, it is proper to state the circumstances under which it was given; and, in doing so, to use the testimony of the witness who was produced, because the second branch of the opinion of this court is, that even if the evidence was admissible, it would not have destroyed the title of the defendants.

In 1820, Beck was acting as agent for the Abbotts and Joseph Low, (under whom the plaintiff, Morrill, claimed,) and who resided in New Hampshire.

On the 31st of May, 1820, Beck wrote that he had found a purchaser for eighty lots, (including the land in question,) at fifty-seven dollars per lot, making four thousand five hundred and sixty dollars, payable in nine, eighteen, and twenty-four months.

On the 12th of July, 1820, Low, who appeared to manage the business, wrote to Beck that he would accept the offer and send a power of attorney by the next mail.

On the 14th of July, 1820, the power was executed and

transmitted to Beck. The concluding part of the instrument was as follows, viz:

"Have made, constitued, and appointed, and by these presents do make, constitute, and appoint, Abraham Beck, of the town of St. Louis, and State of Missouri, our true and lawful attorney, for us and in our names to sell and convey the whole of the said described lands, and make, execute, and deliver good and sufficient warranty deeds for each and every of the aforesaid lands, and to grant and convey the same absolutely in fee simple for such price or sum of money, and to such person or persons as he may think fit and convenient, with such clauses, over-acts, and agreements, as our said attorney shall think fit and expedient, hereby ratifying and confirming all such deeds and conveyances, bargains and sales, which shall at any time be made by our said attorney, touching or concerning the premises.

"In witness whereof, we have hereunto set our hands and seals, this fourteenth day of July, 1820; provided, however, that the condition is understood to be such that our said attorney is to take sufficient security on real estate for all the above lands which may be sold on a credit.

"JOSEPH LOW,    [SEAL.]<br>
"NATH'L ABBOTT, [SEAL.]<br>
"JOHN D. ABBOTT, [SEAL.]"

On the 12th of September, 1820, Beck executed a deed to O'Hara, in the names of his employers, "for and in consideration of the sum of three thousand five hundred and thirty-four dollars to them in hand paid, the receipt whereof is hereby acknowledged."

On the same day, viz: September 12, 1820, O'Hara gave six promissory notes to Beck, payable at different times, and executed the following instrument:

"Whereas I have this day purchased of Abraham Beck, as attorney of Joseph Low and others, ninety-two quarter sections of Illinois military bounty lands, for which I have agreed to pay him at the rate of fifty-seven dollars each, amounting to five thousand two hundred and forty-four dollars, which is payable, one-third at nine months, one-third at eighteen months,

and one-third at twenty-four months, for which I have given my notes payable as above; and whereas I have given my notes payable as above; and whereas some defects exist in the power of attorney by which he has conveyed fifty-seven quarter sections, part of the above, I do covenant and agree with the said Abraham Beck, that, whenever he gets a power of attorney to convey said lots, and confirm his proceedings, and deliver the same to me, that I will execute and deliver to the said Abraham Beck, as attorney for the said persons mentioned, a mortgage upon good and sufficient real estate, sufficient to secure the payment of the above notes.

"St. Louis, *September* 12, 1820.

"Recorded December 6, 1821.

"WILLIAM H. O'HARA."

In September, 1820, O'Hara mortgaged the land to Cabanné, which was acknowledged on the 30th of October, and recorded on the 21st of February, 1821.

On the 23d of November, 1820, Beck wrote to Mr. Low as follows:

"I understood the intention of Mr. O'Hara, who is the purchaser, to be to give a mortgage on the lands. But it appears I misunderstood him. He offered to take the lands at the price and on the terms mentioned, and to give notes at nine, twelve, and twenty-four months, secured by mortgage. I understood, and so I wrote to you, that the mortgage could be on the lands; but he meant to give a mortgage on sufficient other property. This is a difference of no consequence, and I would have concluded the arrangement; but your power of attorney was a limited one, and under which a conveyance could not be good.

"I therefore made the best arrangement I could, which was to make a conveyance of the property, and give a personal guaranty that a proper power of attorney would be forwarded; upon which Mr. O'Hara gave his notes as agreed, and arranged the balance, and gave me a covenant to execute a mortgage upon sufficient real estate whenever a power of attorney, duly executed, should arrive. I therefore consider the thing completed.

*Morrill v. Cone et al.*

"As to Mr. O'Hara's standing and responsibility, I refer you to Mr. Enoch Long, or to Major Long, both of whom well know him. I have drawn a power of attorney, and have shown [it] to Mr. O'Hara, who approves it. I enclose it to you to be executed."

The power thus enclosed, omitted the proviso relative to the security on real estate, retaining the date of July 12, 1820.

On the 12th of February, 1821, this power was again exe- cuted and transmitted to Mr. Beck; but before its execution, Low added the proviso, making it read as before.

On the 30th of July, 1821, the power was recorded.

In October, 1822, the mortgage which O'Hara had given to Cabanné was foreclosed, and the land sold. The defendants claimed under a deed from the commissioner appointed to make the sale and several mesne conveyances, the last of which was to the defendant, John Cone, in 1850.

The bill of exceptions recited the evidence to establish all these facts, together with the deposition of Low, and concluded as follows:

"This being all the evidence in the case, and the court being of opinion that the title of the defendant, John Cone, to the premises in controversy, deduced as aforesaid, was a good and valid title, superior and paramount to the title of the plaintiff, so instructed the jury, who found their verdict accordingly."

Upon which exception, the plaintiff brought the case up to this court.

It was submitted on printed argument by *Mr. Williams* for the plaintiff in error, and *Mr. Browning* for the defendant.

The arguments of the counsel upon both sides were so much involved with the questions of fact, that it would be difficult to report any discussions of abstract principles of law. They are therefore omitted.

Mr. Justice CAMPBELL delivered the opinion of the court.

This suit was brought for the recovery of a parcel of land ly-

ing in the tract appropriated for military bounties in Illinois, and granted by the United States in 1818 to Benjamin Abbott, a private in their army in the war of 1812, as bounty. The title of the plaintiff consisted of a certified copy of the patent to Abbott, and a quit-claim deed of Abbott to him, dated in 1855. He also produced a deed from Nathaniel Abbott to him, dated in 1838. The defendants exhibited the original patent to Abbott; his deed to Nathaniel Abbott, dated in 1818, for the same 'and; a deed from Nathaniel Abbott, John Low, and John D. Abbott, dated 12th September, 1820, to William O'Hara, and executed by Abraham Beck as attorney, and connected themselves with this deed by a number of mesne conveyances, the last of which was to the defendants, and was executed in April, 1850. They entered upon the land under this deed, and paid taxes until the commencement of this suit. These conveyances were recorded in the proper office. The questions presented by the bill of exceptions sealed for the plaintiff on the trial arise on the conveyance to William O'Hara, by Nathaniel Abbott, John Low, and John D. Abbott.

This deed purports to have been made upon a pecuniary consideration, the amount and receipt of which is acknowledged. The letter of attorney to Beck is dated the 14th July, 1820, and was recorded the 30th July, 1821. It authorizes the attorney to sell and convey some sixty-four parcels of land, including the one in dispute, in the military tract described in a schedule annexed, for such price and to such persons as he might think fit, and to make, execute, and deliver good and sufficient warranty deeds to them. To the ordinary testimonium clause a proviso was added, "that the conditon is understood to be such, that our said attorney is to take sufficient security on real estate for all the lands which may be sold on a credit." The donors of this power of attorney reside in New Hampshire; the attorney in Missouri.

The plaintiff read a deposition of John Low, one of the donors of the power, from which we collect that Beck, the attorney, was verbally authorized to find a purchaser for the lands described in the schedule, and other parcels in the military tract in Illinois, and agreed with O'Hara upon the price

and term of credit.   That this agreement was communicated by letter to the witness, who sanctioned it, and sent a power of attorney to Beck to complete the sale and to execute the titles, but to reserve a mortgage on the lands. sold to secure the payment of the purchase money.

O'Hara objected to giving a mortgage upon the lands purchased by him, but offered to give security upon other real property.   Thereupon the attorney prepared a deed for all the lands embraced in the contract to O'Hara, and took his notes for the purchase money, and gave to him his guaranty that his constituents would confirm the sale, and received from him a covenant that whenever Beck should receive a power of attorney to convey said lands and confirm his proceedings, and deliver the same to him, O'Hara, he would deliver to Beck for his constituents a sufficient mortgage upon real property to secure the price.   The power of attorney produced by the defendants was prepared by Beck without the condition, and sent to Low, to be executed by him and the others, to enable him to fulfil the agreement.   This was done by them after adding the condition, on the 12th February, 1821.   The witness says that there was no schedule attached to it.   He answers from information and belief that Beck did not collect from O'Hara any money, or receive from him any further security.   The district judge, upon this testimony, instructed the jury that the defendants had the superior title, and their verdict was accordingly rendered for them.

The authority conferred upon the mandatary by the letter of attorney is special and limited, and his acts under it are valid only as they come within its scope and operation.   He was bound to conform to the conditions it contains, and in its execution to adopt the modes it indicates.

He was authorized to sell the lands for cash, or on a credit with security on real property, to execute a deed describing the consideration, acknowledging its payment, and to receive the money or securities the purchaser might render.   Peck *v.* Harriott, 6 S. and R., 149; 9 Leigh R., 387.   But he was not authorized to exchange the lands for other property, or to accept the notes of the vendee as cash, or to accept personal se-

curity, or any form of security except that specified in the condition. *Non est in facultate mandatarii addere vel demere ordini sibi dato.* These propositions are not disputed as applicable to cases arising between parties to the original contract, in which the limitations on the authority and the circumstances of departure from it in the execution are understood. But it is contended that bona fide purchasers are entitled to repose credit in the recitals and declarations of the attorney as expressed in his deed, that disclose the mode in which the authority has been exercised, and will be protected against their falsity. That the principal is estopped to deny their truth. This argument rests for its support upon the hypothesis that the delinquency of the mandatary is a breach of an equitable trust, a trust cognizable in a court of chancery only, a court that will not administer relief against a bona fide purchaser having the legal title. It assumes that the deed made by the attorney invests the grantee with the legal title, notwithstanding the non-compliance with the condition. If this were true, the inference would follow. Danbury *v.* Lockburn, 1 Meri., 626. But the assumption is not tenable. The attorney was not invested with the legal estate. He was the minister, the servant, of his constituent, and his authority to convey the legal estate did not arise except upon a valid sale in accordance with the requirements of the power.

Doe *v.* Martin, 4 T. R., 39; Minot *v.* Prescott, 14 Mass. R., 495. The deed executed by the attorney is apparently within the scope of his power, and the admission of payment of the consideration is competent testimony of the fact. American Fur Co. *v.* United States, 2 Peters R., 358. But it is competent to his principal to show that the transaction was in appearance only, and not in fact within the authority bestowed.

And the question arises, was there any testimony to be submitted to the jury to repel the presumption that there was a bona fide execution of the trust reposed in the attorney? One of the donors of the power, but who does not appear to be interested in the land otherwise than by the recital in that instrument, admits his knowledge of the terms of the sale made to O'Hara; that this power was remitted to Beck to validate

the contract, as far as it had been executed, and to enable him to complete it according to the engagement that had been entered into.

The power of attorney and the deed had been on the public records for thirty-four years before this suit was commenced, and for five years these defendants had been in the actual possession of the property. It had been repeatedly sold during this long period. To the inquiry made of the witness, whether the purchase money had been paid to the grantors, or whether the security on real property had been taken, he answers: "This affiant is informed and believes that most of the lands were sold to William O'Hara without security, or the payment of anything in hand upon the promissory notes of the said O'Hara, which, as this affiant is informed and believes, were in the hands of Beck at the time of his death, and copies of which, * * as he is informed and believes, * * * are annexed." It is the opinion of the court that this testimony was not admissible; and although it was read to the jury, it did not contain anything to warrant a conclusion unfavorable to the title of the defendants.

Judgment affirmed.