WILLIAM H. LACKLAND, Respondent, *v.* MARY NEVINS *et al.*, Appellants.

February 13, 1877.

1. Though a contingent interest in an estate is not generally transferable in law; yet where it is assigned for a valuable consideration, when it becomes

vested, a court of equity may compel the vendor to make a conveyance of it pursuant to his agreement.

2. The deed of an heir, for a valuable consideration, of all her right, title, and interest in and to the real estate, in possession and in expectancy, of the estate of her father, also all other real estate of which he died seized, which she might inherit, would pass such interest.

3. Where a woman executes a deed as a *feme sole*, there being no evidence that she was a *feme covert*, the fact that she was described in her father's will as M. D., wife of L. D., will not raise a presumption that she was married at the date of the execution of the deed.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

E. B. *Sherzer* and J. Q. A. *Fritchey*, for Howdeshell heirs, cited : Baptist Church *v.* Grout, 3 Gray, 151 ; Williams on Real Pr. 299 ; 2 Washb. on Real Pr. 236 ; Hall *v.* Chaffin, 14 N. H. 215 ; Moffat *v.* Strong, 10 Johns. 12 ; Doe *v.* Tompkins, 2 Mau. & Sel. 165 ; Dening *v.* Longwherf, 25 Me. 51 ; Lewis *v.* Baird, 3 McLean, 56 ; Hall *v.* Howdeshell, 33 Mo. 475 ; Bogy *v.* Sleaf *et al.*, 13 Mo. 365 ; Blanchard *v.* Brooks, 12 Pick. 47.

*Alex. Martin*, for Hall heirs, cited : Hall *v.* Howdeshell, 33 Mo. 476 ; Thompson's Lessee, 6 Ohio (N. S.), 480 ; Winslow *v.* Goodwin, 7 Metc. 363 ; 2 Washb. on Real Pr., 3d ed., 663, 4th ed., 700 ; Williams on Real Pr. 257, margin, 230 ; Agar *v.* George, 2 Law & Eq. Rep. Ch. Div. 363 ; Jones *v.* Roe, 3 Term Rep. 88 ; Wilson on Stat. Uses, 161 ; Wag. Stat. 272, 273, 967.

BAKEWELL, J., delivered the opinion of the court.

John Howdeshell died in 1853, leaving seven children, Mary Nevins, Malinda Jones, Maria Doty, Winnifred Martin, Jacob Howdeshell, Elizabeth Denton, and Ann Beaupied.

By his will he gave a child's share of his estate to George Hall as trustee for Ann Beaupied. The trustee was to pay her the income of the property during her life, and, if she died before her husband, her share of the estate was to go to her brothers and sisters. She did die before her husband. Her trustee, Hall, also died, and respondent, Lackland, was

appointed in his place. Respondent files a bill in equity setting forth that he has in his hands the sum of $2,200, proceeds of the sale of land; $800, proceeds of the sale of negroes — making $3,000, principal, and accumulated interest to the amount of $300, belonging to this trust; that this is claimed by the defendants. Those of the defendants who are heirs of George Hall say that they are entitled to one-half the fund by virtue of conveyance to their father, George Hall, from Maria Doty, Elizabeth Denton, and Jacob Howdeshell. The other defendants, the brothers and sisters of Ann Beaupied, or the heirs of such of them as are dead, deny that George Hall acquired any interest in this fund by these conveyances, and claim that they are entitled to it all.

The will of John Howdeshell has been construed in the Supreme Court, in *Hall* v. *Howdeshell*, 33 Mo. 476. One-seventh of the estate was to be enjoyed by Ann Beaupied during her life, and then to go to her brothers and sisters, providing she died before her husband; otherwise, to go to her right heirs. If the estate devised to Ann was merely a life estate in her, remainder to her brothers and sisters, this is a contingent remainder; if Ann had a determinable fee, then it was an executory devise, because a fee limited contingently upon a fee. It is not important to determine whether the interest of the brothers and sisters of Ann in this property was a contingent remainder or an executory devise. Counsel on both sides seem to agree to call it an executory devise. The questions to be determined in this case are, first, whether it falls within the class of contingent estates which are assignable; and, second, whether it was actually assigned by the conveyance in evidence. The court below, on hearing the evidence, decreed three-sixths of the fund, proceeds of the sale of real estate, to the Hall claimants, and also one-sixth of the personal fund. From this decision those of the claimants who are not representatives of Hall appeal.

1. The rule is that a contingent interest is not generally transferable at law, yet the assignment of it for a valuable consideration will be considered as effectual in a court of equity; and, when it becomes vested, the vendor will be compelled by that jurisdiction to make conveyance of it pursuant to his agreement. We do not think that the brothers and sisters of Ann Beaupied can be heard in this proceeding to say that the interest was not assignable at law, and could not be delivered by deed. If they have made deeds, for a valuable consideration, purporting to convey this interest whilst it was contingent, they are compellable in equity to make sufficient deeds when the estate has become vested, should that be necessary to give title to the purchaser.

The deed of Elizabeth Denton, dated January 5, 1854, is in consideration of $1,800, and purports to convey to George Hall all her right, title, and interest in and to certain real estate described in the deed, and embracing all the real estate belonging to her father at his death; and, "also, all the right, title, and interest, whether in law or equity, as well in possession as in expectancy, of the said Elizabeth Denton of, in, and to the entire estate, real, personal, and mixed, of the late John Howdeshell, deceased."

We have no doubt that this instrument, as a matter of law, conveyed to Hall the contingent interest of Mrs. Denton in the land and property described in it. The doctrine that contingent interests in real estate cannot be conveyed by law remained as one of the last relics of a system of which the policy was to hinder the alienation of land. It is now done away with in England by statute (8 & 9 Vic., ch. 106, sec. 6); it is contrary to the policy of our system, and our statute of conveyances (Wag. Stat. 272, sec. 1) says that "conveyances of land, or of any estate or interest therein, may be made by deed executed," etc. A contingent interest in land is an interest in land, though not a vested interest, and passes by the phrase "all right, title,

and interest of, in, and to," etc. A contingent remainder is not an estate in lands, since it is merely the chance of having; but it is an *interest* in land, and one which long remained inalienable, simply because it had never been thought worth legislating about; so that, as Williams says (Williams on Real Pr. 257), "the circumstance of a contingent remainder having been so long inalienable at law was a curious relic of the ancient feudal system." Our statute is careful to make alienable by deed, not only estates, but also *interests* in land, which covers the case of executory devises and contingent remainders as fully as if they were named.

The deed of Maria Doty is dated December 10, 1855, and purports to convey to George Hall, for $1,100, "all her right, title, and interest in and to the real estate, both in possession and expectancy, of the estate of her father, the late John Howdeshell," describing it as in the last deed; "also, all the real estate of which her father, the late John Howdeshell, may have died seized, or which she might inherit by or through her father, the late John Howdeshell."

We think one-sixth of the fund, proceeds of the realty, passed by this deed, for the reasons above stated.

It is objected that Maria Doty is described in the will of her father as the wife of Larkin Doty, and her husband does not join in this deed. No attempt is made to prove that she was a *feme covert* at the time of the execution of this deed. It is not disputed that she is the daughter of Howdeshell mentioned in his will. In making this objection, counsel rely upon the rule that a state of things once shown is presumed to continue until a change is shown. But they do not advert to the fact that the state of things shown is not the coverture of Mrs. Doty. There is no legal evidence, and no admission, that she ever was married, and we cannot presume it. The deed from her seems to be the deed of a woman discovert at the time the deed was made, and is good enough, for anything that appears.

The remaining third of a sixth of the fund created by sale of the realty. is claimed under deeds from the administrator of Jacob Howdeshell. The bill of exceptions shows only one deed from the administrator of Jacob Howdeshell. This deed, dated September 4, 1855, uses the words "grant, bargain, and sell," and purports to convey the one undivided seventh part of a tract of twenty-eight acres owned by John Howdeshell when he died. We surmise, from the fact that it is taken for granted in the brief of counsel for respondent, that a deed of January 21, 1856, from the same grantee, describing the large tract of 196 acres belonging to the Howdeshell estate, was also introduced on the trial; but this is not shown by the bill of exceptions. The brief of counsel also alluded to conveyances from the Howdeshell heirs in partition to Blair, and from George Hall to Blair. Such deeds are indicated in the bill of exceptions by their titles and dates as having been offered in evidence, and may have the operation ascribed to them by counsel for respondent; but the deeds are not transcribed, nor their substance shown, and we are left to conjecture their contents and effect. We know nothing of the partition sale not contained in a record admission that the $2,200, proceeds of real estate, was received from Francis P. Blair, Jr., being proceeds of Howdeshell lands sold to him in partition.

As far as this record shows, there is a failure here of proof to support the decree. It does not appear that Hall ever acquired the one-third of one-sixth which, we are told by counsel, passed by virtue of certain deeds not before us for consideration.

It is argued that George Hall confirmed to Blair the entire interest and estate of Jacob, by a deed of April 6, 1858, which is not before us; and that this fund proceeded from the sale to Blair and confirmation of his title by Hall; and that Blair paid the money in controversy upon the faith of the confirming deed and partition sale; and that the fund

proceeds from a sale of Jacob's one-sixth interest in one-seventh, which sale rests upon the validity of Hall's confirmation as owner of it; and that Hall's representatives ought to have the money proceeding from the title acquired from him. It is also argued that, if Hall did not own Jacob's contingent estate, Blair never acquired it — it is still in the brothers and sisters; at any rate, denying the validity of the transfer, they can claim no part of the proceeds.

This argument is not founded upon the facts presented by this record. The partition sale occurred after the death of Jacob Howdeshell; and it does not appear who were the parties to the proceedings in partition, nor that Hall ever acquired any interest whatever in any land inherited by Jacob of his father, except the twenty-eight-acre tract described in the administrator's deed. For all this record shows, the contingent interest of Jacob in the tract of 148 acres sold to Blair was never conveyed to any one before the partition sale, and may by virtue of these proceedings in partition have passed to Blair, together with all title and estate to the realty which was owned by John Howdeshell at the time of his death. Every living soul having or claiming any interest, vested or contingent, in the Howdeshell lands may have been, and probably was, a party to the partition under which Blair acquired, and we cannot see what he got by the Hall deeds to him, which are not set out in the record.

The deed from Jacob Howdeshell by administrator to Thomas, which is set out in the record, and under which Hall acquired, is, however, plain enough. It conveys, " one undivided seventh part" of the twenty-eight-acre tract. It does not purport to convey all the interest of the deceased in this tract, nor does it say that his interest is a seventh, nor does it recite that the sale was made by virtue of any order to sell all the right, title, and interest of the deceased in the land described. We cannot, therefore, say,

from the deed itself, that the contingent interest of Jacob in the twenty-eight-acre tract passed by this deed.

We can pass only upon the state of facts presented by the record brought before us; and it does not warrant the decree, because it does not show that the one-sixth interest of Jacob Howdeshell in the one-seventh interest of Mrs. Beaupied in her father's lands were passed to the legal representatives of George Hall.

For this reason the judgment must be reversed and the cause remanded, and it is so ordered. The other judges concur.