## NORTH AMERICAN LOAN & TRUST CO. v. COLONIAL & U. S. MORTG. CO., Limited.

## COLONIAL & U. S. MORTG. CO., Limited, v. NORTH AMERICAN LOAN & TRUST CO.

### (Circuit Court of Appeals, Eighth Circuit. December 6, 1897.)

### Nos. 911 and 915.

1. CORPORATION SUCCEEDING PARTNERSHIP—ASSUMPTION OF CONTRACTS.

A partnership, which was acting as agent for a foreign mortgage company in making farm loans, made an agreement with such company to collect such loans without charge in addition to the commissions received in making the loans, and to foreclose the mortgages taken, when necessary, without charge for attorney's fees. The partnership was succeeded in business by a corporation formed by the partners, who were its officers and directors, which assumed the balance due from the partnership to the mortgage company on account, and continued the business during the ensuing five years without further agreement, collecting money, and foreclosing numerous mortgages for which no charge was made in its monthly reports. *Held*, that the corporation must be held to have adopted the agreement made by the partnership with reference to such services, and could not, after such a lapse of time, assert a right to compensation therefor.

2. SAME—ESTOPPEL.

Where a partnership acting as agent for a mortgage company in making farm loans agreed to guaranty the title to all lands on which loans were made, a corporation organized to succeed to the business of the partnership, and of which the parties were the officers and directors, which procured legal services in perfecting such titles without any agreement by the mortgage company to pay therefor, will be held to have done so in discharge of the obligations of the partnership, no charge having been made therefor in current accounts rendered to the mortgage company, nor for several years thereafter.

3. REVIEW ON ERROR—RECORD—OPINION OF COURT.

A memorandum of opinion filed by the trial judge is no part of the record in the case, and assignments of error based thereon, and not supported by exceptions properly taken and preserved in the record, will not be considered by the circuit court of appeals. 76 Fed. 623, modified.

In Error to the Circuit Court of the United States for the District of South Dakota.

This suit was brought by the North American Loan & Trust Company, a corporation of South Dakota, hereafter termed the "Trust Company," against the Colonial & United States Mortgage Company, Limited, a corporation of Great Britain, hereafter termed, the "Mortgage Company." Both parties have sued out writs of error to reverse the judgment of the circuit court, but the case is before this court for review on a single record. The Trust Company sued the Mortgage Company to recover the sum of $48,729.45 for services rendered for and in behalf of the Mortgage Company. It alleged, in substance, that the Mortgage Company was justly indebted to it to the amount last stated for commissions which it had earned in collecting moneys due to the Mortgage Company, and for services rendered by certain attorneys in foreclosing certain mortgages and in examining titles for the Mortgage Company; also for serv-

ices rendered in collecting rents for the latter company. In its answer to the complaint the Mortgage Company denied all liability to the Trust Company for any of the alleged items of indebtedness, and averred, in substance, that the Trust Company had received full compensation for all services in its behalf rendered. It further averred, in substance, that the Trust Company was the successor in interest of a co-partnership known as the Dakota Farm-Mortgage Company; that the Trust Company and its predecessor in interest, the Dakota Farm-Mortgage Company, had for some years acted as its agents in the state of South Dakota in loaning money on real-estate security, and in collecting the principal and interest due on such loans as they matured; that by the arrangement under which said loans and collections were made by said agents they received full compensation for their respective services by a commission which was paid by the borrowers, either when the loans were negotiated, or from time to time thereafter, as interest on the loans was paid; that by the terms of the agreement under which said agency for the loan of money was created, the agent negotiating the loan was required to guaranty the title to all lands on which loans were made; that by an agreement entered into with the co-partnership known as the Dakota Farm-Mortgage Company, which was binding on the Trust Company as its successor in interest, the latter undertook to foreclose mortgages belonging to the Mortgage Company free of cost to the latter company for attorneys' fees; and that any moneys which had been advanced and paid to attorneys by the Trust Company for foreclosing mortgages and for other services were laid out and expended for services rendered for and in behalf of the Trust Company, and were not a legal charge against the Mortgage Company. The Mortgage Company also filed a counterclaim against the Trust Company, wherein it charged that the Trust Company was justly indebted to it in the sum of $19,881.90 for moneys collected by the Trust Company as agent, which it had not paid over to its principal. A reply was filed by the Trust Company, and the case, by agreement, was sent to a referee for hearing and report upon all the issues.

In due time the referee made and filed his report, wherein he recommended the entry of a judgment against the Mortgage Company in the sum of $13,421.94. The amounts allowed by the referee in favor of the Trust Company were as follows:

| | |
|---|---:|
| For services rendered in the foreclosure of mortgages by advertisement | $ 7,075 00 |
| For services rendered in the foreclosure of mortgages by action. | 609 55 |
| For services rendered in procuring deeds to lands from the mortgagors | 1,315 00 |
| For services rendered in perfecting titles to lands at the public land office | 2,610 00 |
| For commissions for collecting the principal and interest on loans | 9,772 38 |
| For services rendered in paying taxes on lands belonging to the Mortgage Company | 1,366 00 |
| For services rendered in leasing lands | 120 00 |
| Total | $22,867 93 |

The referee reported that the Trust Company had in its hands the sum of $9,445.99, which it had collected for and in behalf of the Mortgage Company, leaving a balance due to the Trust Company, as above stated, of $13,421.94.

To this report exceptions were filed, and on the hearing of the exceptions the circuit court refused to review any of the findings of fact made by the referee. It held, however, that the referee had erred in his conclusions of law, and it accordingly directed that a judgment be entered against the Trust Company, and in favor of the Mortgage Company, in the sum of $9,327.46. This amount appears to have been arrived at by the court by correcting a clerical error made by the referee, and by charging the Trust Company with the sum of $769.16, in addition to the sum of $9,445.99, found by the referee to be in its hands, and by deducting from the gross amount thus ascertained the sum of $887.70, which the trial court found the Trust Company was entitled to retain as a commission for the collection of interest due on certain loans that had been negotiated by the firm of Donahue & Payne.

John L. Pyle and A. B. Melville, for North American Loan & Trust Co.

L. B. French (A. H. Orvis, on the brief), for Colonial & U. S. Mortg. Co., Limited.

Before BREWER, Circuit Justice, and THAYER, Circuit Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The circuit court held that, upon the state of facts found and reported by the referee, the plaintiff below, the North American Loan & Trust Company, was not entitled to charge the defendant below, the Colonial & United States Mortgage Company, Limited, for services rendered in foreclosing mortgages, and that it was not entitled to charge the Mortgage Company a commission for collecting the principal and interest of loans that had been negotiated for and in behalf of the defendant company by the Dakota Farm-Mortgage Company. The circuit court accordingly overruled two findings made by the referee, designated in his report as findings Nos. 45 and 73, wherein the referee had expressed a contrary view, upon the ground that said findings, when read in connection with other parts of the report, were essentially conclusions of law, and in no proper sense findings of fact. Error is assigned because of such action on the part of the trial court. We are not satisfied, however, that the exception is well taken. It appears from the report of the referee that a co-partnership known as the Dakota Farm-Mortgage Company, consisting of several persons, was organized in the year 1882, at Huron, S. D.; that it became the agent of the defendant Mortgage Company in the year 1883 for loaning money in the state of South Dakota, and for the collection of the principal and interest of such loans when due; that in May, 1885, one member of said firm as at first organized retired from the firm, and that two other persons were admitted to membership; that thereafter the reorganized firm continued the business of the old firm under the same firm name, and conducted the business in substantially the same way that it had previously been transacted, and assumed all the liabilities of the old firm; that the reorganized firm continued to act as agent for the Mortgage Company in loaning its money until November, 1887, at which latter date the members of the co-partnership organized a corporation under the name of the Dakota Farm-Mortgage Company, and that all the members of the former partnership became officers and directors of the corporation when the same was organized; that the corporation thus organized assumed the balance of account due to the defendant Mortgage Company, as shown by the last account which had been rendered by the co-partnership, and thereafter, for a period of about five years, made reports to the Mortgage Company, in which it made the same charges against the Mortgage Company for services rendered and expenses incurred in the business of the agency that had been previously made by its predecessor in interest, the Dakota Farm-Mortgage Company; that in January, 1891, the corporation changed its name, and was thereafter known as the

North American Loan & Trust Company; that from the date of its organization in November, 1887, until 1892, the corporation never made any claim in any of the numerous reports which it made to the Mortgage Company for services rendered in collecting the principal and interest of loans that had been negotiated by either of the co-partnerships which transacted business under the name of the Dakota Farm-Mortgage Company, but, during the whole of said period, contented itself with making the same charge for services and expenses which its predecessors in interest had made, and that its predecessors in interest had never made any charge for the species of service last aforesaid.

The referee further found that the Mortgage Company ceased to make new loans about the month of April, 1887; that in October of that year—a month or so before the plaintiff corporation was organized—it became known that many of the loans previously made, which were secured by mortgages, would not be paid, and that it would become necessary to foreclose numerous mortgages; that, in view of such fact, and in view of the fact that the co-partnership was about to become a corporation, L. H. Hole, who was then acting as general manager of the partnership, and who subsequently became president of the corporation, entered into an agreement with the Mortgage Company to foreclose its mortgages, either by suit or advertisement, as might be directed, and that in no case should the attorney's fee provided for in the respective mortgages become a lien or claim against the Mortgage Company, or its patrons, or against the lands foreclosed in the hands of the Mortgage Company, or its clients; that thereafter, between the years 1888 and 1891, many mortgages were foreclosed by attorneys who were employed by the plaintiff corporation, and that in the monthly statements of account thereafter rendered to the Mortgage Company no charge was made for the services of attorneys in foreclosing mortgages either by suit or by advertisement.

It is suggested in behalf of the Trust Company that, inasmuch as the referee may not have reported all the facts which were disclosed by the evidence, the general statements contained in paragraphs 45 and 73 of the report, to the effect that the plaintiff did not agree "that there should be no charge for attorneys' fees," and that it did not agree to collect without charge the principal and interest of loans where the money was not reinvested, ought to be accepted as ultimate findings of fact, and for that reason not open to review, either by the trial court or an appellate court.   In reply to this suggestion it is only deemed necessary to say that the referee reported the facts which were proven on the trial with unusual fullness and detail, and it seems evident, from an inspection of the report, that the statements contained in paragraphs 45 and 73 are merely conclusions drawn by the referee from the facts theretofore detailed in his report, the substance of which we have already stated.   We are furthermore of opinion that the conclusions thus drawn by the referee were erroneous, and that they were not justified by the conduct, dealings, and agreements of the parties as they are disclosed by the report.   For a period of about five years the plaintiff company kept

and observed the agreement which was made by its president, L. H. Hole, in October, 1887, relative to the foreclosure of mortgages, and in the meantime it made no charge for legal services rendered in connection with the foreclosure of mortgages, whether they were foreclosed by action or by advertisement. Moreover, L. H. Hole, the president of the plaintiff company, who made the agreement of October, 1887, was one of the attorneys who were employed by the plaintiff to prosecute the foreclosure suits. When the agreement last referred to was made, it was doubtless supposed that very much of the land which would be sold under the mortgages would eventually be redeemed from sale, and that the attorneys' fees earned in foreclosure proceedings would be paid by the mortgagors when the land was thus redeemed. But, be this as it may, it is clear, we think, that after such a long-continued course of dealing, in which the plaintiff company never asserted any right to attorneys' fees, it is now too late to interpose such a claim. In view of the plaintiff's conduct, the conclusion is inevitable that the plaintiff company adopted the agreement which was made by its president shortly prior to its incorporation, and that the services by it rendered in foreclosing mortgages were performed in compliance with the terms of that agreement, which precluded any charge for attorneys' fees.

The same considerations to which we have last adverted apply with equal force to the claim which the plaintiff prefers for compensation for services rendered in behalf of the Mortgage Company in collecting the principal and interest of loans. Neither of the co-partnerships known as the Dakota Farm-Mortgage Company, to whose business the plaintiff company succeeded, ever made a practice of charging for services of that nature; the arrangement being, according to the referee's findings, that the commission received from borrowers when loans were negotiated should be regarded as a sufficient compensation for all services that might be rendered thereafter in making collections of either the principal or interest of loans. The plaintiff company, for five years, pursued the same practice which had been followed by its predecessors, and during that period made collections of principal and interest to the amount of $181,371.31, without asserting any claim for compensation on account of such services. Most of the money so collected it has paid over to the Mortgage Company, and, as the Mortgage Company is itself an agent for the investment of moneys intrusted to it by its customers, it is fair to presume that the Mortgage Company has, in turn, paid the money to the various persons to whom it belongs. Something was said in argument of the great injustice which would be done by requiring the plaintiff to collect loans without charge, after it was denied the right of reinvesting the moneys so collected; but a greater injustice would be done to the Mortgage Company by requiring it to pay a commission for such collections after it has paid the money to its customers and clients without any knowledge that a claim for such commissions would be interposed. In a variety of ways the collection of moneys belonging to the Mortgage Company may have been a benefit to the Trust Company, but, whether it did or did not derive a benefit from the collections in question,

it cannot be heard at this late day to make a claim for such services. It should have demanded compensation for the services while the same were being rendered, or at least have given notice of its intention to charge for the same. The fact that it made no such demand and gave no such notice, but continued to render the services without charge, fully justifies the conclusion that it considered itself in duty bound to make the collections in question for the purpose of discharging the obligations which rested upon its predecessors in interest, by whom the loans had been negotiated. We conclude, therefore, that the trial court acted properly in overruling the referee's conclusions, as expressed in paragraphs 45 and 73 of the report, and in rejecting the claims to which those paragraphs of the report relate.

Complaint is further made by the Trust Company of the disallowance by the trial court of the sum of $2,610, which was allowed by the referee as compensation for services rendered by the Trust Company in perfecting the titles to certain lands on which money of the Mortgage Company had been loaned by the co-partnership known as the Dakota Farm-Mortgage Company. With reference to this contention it may be said that the report of the referee discloses, in substance, that money of the Mortgage Company was loaned by the co-partnership under an agreement with the Mortgage Company which required the co-partnership to guaranty that the titles to all tracts of land on which money might be loaned were perfect in every respect, and that the mortgages taken thereon in favor of the Mortgage Company were a first charge on the land; that considerable money was in fact loaned by the co-partnership on land, the title whereof was not perfect, by reason of some defect in the proceedings under and by virtue of which the land had been entered at the public land office; that doubts arose as to the validity of such entries, and that the same were suspended by the officers of the land department; that it became necessary to procure evidence to free said entries from suspension and perfect the titles; and that L. H. Hole, who was styled president of the co-partnership known as the Dakota Farm-Mortgage Company, and who was afterwards president of the plaintiff company, was one of the attorneys for whose services in perfecting said land titles the charge now in question is preferred. It has already been stated that the referee's report further shows that all the other members of the co-partnership by which the loans on defective titles had been made afterwards became the officers and directors of the plaintiff company, and therefore had a direct interest in curing whatever defects existed in titles to land on which the co-partnership had loaned the money of the Mortgage Company. The referee does not report or find that the services rendered in perfecting the land titles were rendered in pursuance of an agreement that the Trust Company should be paid for such services, or that charges for such services were made in its monthly reports to the Mortgage Company contemporaneously with the rendition of such services, or that any claim was made on that account until the year 1892, when differences had arisen between the two companies, although the services in question were rendered during the years 1888, 1889, and 1890.

83 F.—51

Under these circumstances, we are of opinion that the law will not imply a promise on the part of the Mortgage Company to pay for the services rendered in perfecting the land titles, but will rather infer that such services were rendered by the corporation in discharge of the obligations of the co-partnership. We cannot say, therefore, that an error was committed by the trial court in disallowing this claim, even on the state of facts reported by the referee.

This disposes of the principal errors which have been discussed, but two others remain to be noticed. The referee found that the plaintiff company had collected for the Mortgage Company the sum of $67,-896.99, being the principal of loans that were negotiated by the firm of Donahue & Payne, and that a commission of 3 per cent. thereon, or the sum of $2,036.90, was a reasonable compensation for the services in question. The circuit court did not disturb this finding of the referee. 'Moreover, counsel for the Mortgage Company concede the Trust Company's right to compensation for collecting the Donahue & Payne loans. It seems, however, that in entering judgment on the referee's report the circuit court disallowed the sum of $9,772.38, which the referee had allowed as compensation for the collection of the principal and interest of all loans, including the Donahue & Payne loans, and that by so doing it deprived the plaintiff company of its commission on the latter class of loans, amounting to $2,036.90. Counsel for the Mortgage Company have suggested that these commissions were allowed to the plaintiff by the referee in making up his report on the Mortgage Company's counterclaim, and in stating the balance of money in the Trust Company's hands which it had not paid over to the Mortgage Company. This suggestion, however, is not confirmed by a careful examination of the referee's report. In view of the manner in which the account was stated by the referee in his report, it seems obvious that the commission due to the Trust Company for collecting the Donahue & Payne loans was not deducted in stating the balance of collections found to be in the Trust Company's hands.

Again, the referee reported that the plaintiff was entitled to compensation in the sum of $1,366 for paying taxes on land belonging to the Mortgage Company, or for buying in such lands at tax sales; also that the Trust Company was entitled to compensation in the sum of $120 for leasing lands belonging to the Mortgage Company, and for collecting the rents which accrued under such leases. These findings by the referee were not disturbed, and in pursuance thereof it seems clear that the plaintiff company should have received credit for both of the last-mentioned sums, aggregating $1,486. The result is that the plaintiff should have received credit for items aggregating $3,-522.90, which were disallowed by the circuit court, and the judgment rendered in favor of the Mortgage Company is, to that extent, excessive. It is not necessary, however, to reverse the judgment of the circuit court because of this error, but, following a practice which was approved by the supreme court in Railroad Co. v. Estill, 147 U. S. 591, 622, 13 Sup. Ct. 444, and by this court in Commissioners v. Sherwood, 27 U. S. App. 458, 468, 11 C. C. A. 507, and 64 Fed. 103, the error may be cured by affirming the judgment for the correct amount due to the Mortgage Company, and disaffirming it as to the residue.

Concerning the writ of error which was sued out by the Colonial & United States Mortgage Company, it will suffice to say that the assignment of errors accompanying that writ is addressed to certain views which were expressed by the trial judge in a short "memorandum of opinion" filed in the circuit court, which has been certified to this court in connection with the record. The opinion in question forms no part of the record, however, and assignments of error based thereon which are not supported by exceptions properly taken at the trial and preserved in the record cannot be noticed by this court. We find nothing in the record proper which would enable us to consider the errors which have been assigned by the Colonial & United States Mortgage Company, the defendant below, wherefore the writ of error which was sued out in its behalf in case No. 915 must be dismissed. It is accordingly ordered that the judgment of the circuit court be affirmed in the sum of $5,804.56, with interest, and that the residue of the judgment rendered by the circuit court in excess of that amount be disaffirmed, and that the costs incurred in this court be equally divided between the parties.