GARTH et al. v. ARNOLD et al.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1902.)

No. 1,599.

1. STATUTES—VALIDITY—AUTHORIZING SALE OF INFANTS' LANDS.

It is the settled law of Missouri that, prior to the adoption of the constitution of 1865, it was competent for the general assembly, by special act, to authorize the sale of lands belonging to minors or persons non compos mentis; and the law had been so well established, and so many titles had been acquired on the faith thereof, as to constitute it a rule of property in the state.

2. APPEAL—QUESTIONS REVIEWABLE—ACTION TRIED TO COURT.

Where, by stipulation, an action at law is tried in a circuit court without a jury,—a part of the facts being stipulated, and others specially found by the court,—in the absence of a bill of exceptions the only question open for consideration by the appellate court is whether the judgment is warranted by the pleadings and sustained by the facts stipulated and found by the trial court.

3. INFANTS—EXERCISE OF POWER TO CONVEY LANDS OF MINORS—BURDEN OF PROOF TO SUSTAIN TITLE.

Power conferred by legislative act upon persons to sell and convey the interests of certain minors in lands must not only be strictly exercised, but, since the donees have no title to the interests they are authorized to convey, one who sets up a title in virtue of the exercise of such power must furnish the evidence to support it; and, where the validity of the deed under which he claims depends upon acts in pais, he must prove the performance of such acts,—the fact that he was an innocent purchaser, claiming through mesne conveyances, affording him in such case no protection.

4. SAME—CONSTRUCTION OF POWER.

Where an act of the legislature conferred power upon persons to sell and convey the land of certain minors "for cash or on credit," a conveyance of the land in exchange for personal property was void, and did not devest the title of the minors.

5. SAME—EXPIRATION OF POWER—INFANT REACHING MAJORITY.

A power conferred by the legislature on persons to sell lands of minors, being dependent on the fact of minority, terminates as to any one of such minors when he reaches majority and becomes sui juris.

**6. DEEDS—CONSTRUCTION—ESTATES CREATED.**

Rev. St. Mo. 1855, c. 32, § 5, provided that when a conveyance or devise was made whereby the grantee or devisee should become seised, in law or equity, of such an estate in land as, under the statute of entails, would have been held to create an estate tail, "every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in such premises, and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common in fee, and if any child be dead, the part which would have come to him or her, shall go to his or her issue, and if there be no issue, then to his or her heirs." *Held*, that by virtue of such statute a deed conveying land to a mother "and to the heirs of her body" gave to her a life estate, and to her children living at the date of the conveyance a vested remainder in fee, which would open up to let in after-born children, if there were any.

In Error to the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 106 Fed. 13.

This is an action of ejectment to recover certain lands situated in Clay county, Mo., described as the N. E. ¼ of section 20, township 51 N. of range 31 W., except a part thereof which lies south and west of a public road, running from Liberty, in said county, to Liberty Landing. Both parties claimed title under Joel Turnham, a common source of title, who was seised and possessed of the land in question on and prior to January 17, 1855. The case was submitted on an agreed statement of certain facts, and the trial court found specially other facts, a jury having been waived. From the facts so agreed and found we extract the following, which are all that are deemed essential to the present decision: On January 17, 1855, Joel Turnham conveyed the property in controversy to his married daughter, Ann R. Arnold, by a deed which granted the same to her "and to the heirs of her body"; the latter words being words which at common law, as is well known, would have created an estate tail. The deed, however, was governed by section 5, c. 32, Rev. St. Mo. 1855, which provided that, after the passage of the act, when a conveyance or devise was made whereby the grantee or devisee should become seised, in law or equity, of such an estate in land as under the statute of entails would have been held to create an estate tail, "every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in such premises, and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common in fee, and if there be only one child, then to that one, in fee, and if any child be dead, the part which would have come to him or her, shall go to his or her issue, and if there be no issue, then to his or her heirs." On March 12, 1859, the general assembly of the state of Missouri was induced to pass a special act, which, after reciting that the land in controversy was given by Turnham to his daughter for and during her natural life, and at her death to her children in equal portions, "without any moneyed consideration and wholly from paternal affection," declared "that Joel Turnham and Ann R. Arnold are hereby authorized to sell and convey all the right, title and interest, contingent or otherwise, of Joel T. Arnold, David D. Arnold, Charles B. Arnold, Edward C. Arnold, Allen K. Arnold and Louisa E. Arnold, of, in and to" the land in controversy, and that "they, the said Joel Turnham and Ann R. Arnold, may make such sale privately or publicly for cash or on credit," and that "the proceeds of such sale shall be trust funds in the hands of the said Joel Turnham and Ann R. Arnold, to be held or reinvested by them subject to the same uses and limitations as the land is now held." On January 1, 1862, Joel Turnham and Ann R. Arnold executed a bond for a deed to the

land in controversy in favor of one William Austin, of Clay county, Mo. In this bond the obligors described themselves as residents of Milam county, Tex., and further recited therein that they had derived their authority to sell the land by an act of the legislature of the state of Missouri "made about three years ago, which is contained in the acts of that session." On February 1, 1862, Turnham and his daughter, Ann R. Arnold, executed a power of attorney in favor of one J. T. Downing, whereby they appointed him their true and lawful attorney "to bargain, sell, alien, and convey unto William Austin a certain tract of land situate, lying, and being in the county of Clay and in the state of Missouri, and containing one hundred and sixty acres, and is described in annexed bond for titles made by unto said William Austin, and to make to said Austin a warranty deed to the same, and do all acts in reference to the same in as full and complete a manner as" they could do themselves if they were personally present. On June 2, 1862, J. T. Downing, acting under the aforesaid power of attorney, executed and delivered to said William Austin a deed to the land in controversy. This deed contained a full recital of the special act of the general assembly of the state of Missouri of date March 12, 1859, above referred to, also an appropriate reference to the aforesaid power of attorney in favor of Joseph T. Downing, and, in terms, conveyed to William Austin, and to his heirs and assigns forever, the tract of land in controversy. The defendants below, Susan C. Garth, William Portwood, Hugh Portwood, Ed Portwood, June Portwood, and Abraham Portwood, who are the plaintiffs in error, claim title to the land in controversy by regular mesne conveyances from William Austin, and are vested with all of the title which was conveyed by the deed of Joel Turnham and Ann R. Arnold, which was made by their attorney in fact, Joseph T. Downing. On March 12, 1859, when the aforesaid act authorizing the conveyance of the land in question was passed, Ann R. Arnold was the mother of the following children, then living: Robert H. Arnold, who was then over 21 years of age; Joel T. Arnold, who was born March 11, 1839; David D. Arnold, who was born April 11, 1841; Charles B. Arnold, who was born in 1846; Edward C. Arnold, who was born in 1848; Allen K. or Allen W. Arnold, who was born in 1850; Louisa E. Arnold, who was born in 1853. Of these children, Robert H. Arnold died in 1868, Charles B. Arnold died in 1873, and Edward C. Arnold died in 1874, without leaving any lineal descendants, as the record recites. Ann R. Arnold, the mother of the aforesaid children, died in 1896, leaving surviving her, as the heirs of her body, the two plaintiffs in this action, namely, Joel T. Arnold and David D. Arnold; also Allen K. or Allen W. Arnold and Louisa E. Arnold, who had intermarried with one Dan Leavell. The trial court found, as a matter of fact, that when Ann R. Arnold and her children were on their way to Texas, in the fall of 1861, they overtook William Austin, who was on his way to Texas with some race horses, and was afterwards engaged in racing horses in Texas; that at the time the title bond in favor of Austin, and the power of attorney in favor of Downing, were executed, Joel Turnham and Ann R. Arnold and said William Austin were living near Milam, in Texas; and that Ann R. Arnold received from said Austin, as the sole consideration for the conveyance of the land in controversy to said Austin, a negro man and some horses. It further found that neither Joel T. Arnold nor David D. Arnold received any part of the consideration which was received on account of the sale of the land to Austin. Joel T. Arnold and David D. Arnold, who were the sole plaintiffs below, claimed that, by virtue of the facts aforesaid, they had not been devested of their title to the land; and the court below adopted that view, rendering a judgment in favor of each for an undivided one-fourth part of the tract of land heretofore described. The defendants below brought the case to this court upon a writ of error.

J. M. Sandusky (B. P. Finley, D. B. Holmes, H. F. Simrall, F. H. Trimble, and S. G. Sandusky, on the brief), for plaintiffs in error.

Henry D. Ashley and William S. Gilbert (L. C. McBride, Monta J. Moore, and Denton Dunn, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A considerable portion of the argument with which we have been favored deals with the question whether the act of March 12, 1859, supra, which authorized Joel Turnham and Ann R. Arnold to sell and convey the interests of Mrs. Arnold's six minor children in the land in controversy, was a lawful exercise by the state of legislative power. Concerning this question it is only necessary to say that it may be conceded to be well settled in the state of Missouri that, prior to the adoption of its constitution of 1865, it was competent for the general assembly, acting as parens patriæ, to authorize by special laws the sale of lands belonging to minors and persons non compos mentis. The power in question had been repeatedly exercised and upheld. Indeed, the doctrine was so well established by local decisions, and so many titles had been acquired on the faith thereof, as to constitute it a rule of property. Stewart v. Griffith, 33 Mo. 13, 82 Am. Dec. 148; Gannett v. Leonard, 47 Mo. 205; Shipp v. Klinger, 54 Mo. 238; Cargile v. Fernald, 63 Mo. 304; Clusky v. Burns, 120 Mo. 567, 25 S. W. 585. In one of these cases (Shipp v. Klinger) the supreme court of the state declined to go into the question of the right of the legislature to exercise such a power, or to consider it as open for further discussion.

We are also disposed to concede, for present purposes, but without expressing a definite opinion thereon, that the validity of the act in question was not affected by the fact that the legislature did not require the persons who were authorized to sell the interests of the minors in the land to give a bond conditioned for the faithful management and reinvestment of the proceeds of the sale, and that the validity of the act would not have been affected, even if the deed of Joel Turnham to Ann R. Arnold, of date January 17, 1855, supra, had had the effect of creating contingent remainders in favor of Mrs. Arnold's children. As the legislature had the power to authorize a sale of the interests, it may well be argued that such a power included the right to determine whether, in view of all the circumstances of the case, a bond ought to be exacted from those in whom the power of sale was vested. Gannett v. Leonard, 47 Mo. 205, 207. And inasmuch as the courts of Missouri seem to have abandoned the common-law doctrine that a contingent remainder is inalienable until it has become a vested estate (Godman v. Simmons, 113 Mo. 122, 130, 20 S. W. 972; Sikemeier v. Galvin, 124 Mo. 367, 27 S. W. 551; Lackland v. Nevins, 3 Mo. App. 335), it may be argued with some force that the legislature, prior to 1865, could authorize the sale of the interests of Mrs. Arnold's children in the land in controversy, although such interests were contingent, and not vested. We would not be understood, however, as expressing a definite opinion on either of the latter questions, because a decision of the same, upon the present record, is unnecessary.

As above shown in the statement, the learned trial judge found specially that the land in controversy was not sold for cash or on credit, as the act authorizing the sale provided, but was traded for "a negro man and some horses"; and such finding must be accepted as

conclusive by this court, and the case decided accordingly. Counsel for the plaintiffs in error challenge this finding, and the competency of the evidence by which it was established, but neither of these contentions can be noticed. This case was tried before the court without a jury; a part of the facts being stipulated, while others were found specially by the court. No bill of exceptions was filed to bring any of the testimony upon the record, and, so far as we are advised, no exceptions were taken to the admission of any testimony. All the knowledge that this court has concerning the testimony is derived from certain excerpts therefrom found in the opinion of the trial judge; but that does not make the testimony a part of the record, or present for review the question whether the testimony was competent, because the opinion of the court, not being embraced in a bill of exceptions, forms no part of the record. North American Loan & Trust Co. v. Colonial & U. S. Mortg. Co., 28 C. C. A. 88, 95, 83 Fed. 796; Association v. Du Bois, 29 C. C. A. 354, 85 Fed. 586. Tried as this case was, the only question open for discussion in this court is whether the facts, as stipulated and found by the trial judge, sustain the judgment. Searcy Co. v. Thompson, 13 C. C. A. 349, 66 Fed. 92; Walker v. Miller, 8 C. C. A. 331, 59 Fed. 869.

Assuming, therefore, as we must, that the land in controversy was traded for personal property, and not sold "for cash or on credit," as the statute directed, the questions arise whether the title of the plaintiffs below, which was acquired by virtue of the deed to their mother that was executed by Joel Turnham on January 17, 1855, was devested by the conveyance to William Austin of date June 2, 1862, and whether the defendants below, claiming by mesne conveyances under Austin, and presumably without knowledge that he traded for the land, are entitled to protection. We are of opinion that both of these questions must be decided in the negative. It is clear that Joel Turnham and Ann R. Arnold were vested by the statute with merely a naked power, as respects the right to sell the interests of the minor children in the land in controversy, and not with a power coupled with an interest. Under such circumstances, the rule is not only that the power must be strictly exercised, but that one who sets up a title in virtue of the exercise of such a power must furnish the evidence to support it; and, where the validity of a deed under which he claims depends upon acts in pais, he must prove the performance of such acts. Neither Turnham nor his daughter, Mrs. Arnold, was vested with the legal title to the interests of the minor children of Mrs. Arnold, which they were authorized to convey. They simply had a power to sell the children's interests, without being vested with the legal estate, and they could convey the legal title only by a sale made in strict accordance with the power. They are not in the position of one who, while holding the legal title to property in trust for another, conveys it to an innocent purchaser for value in violation of the trust. Not only Austin, but all subsequent purchasers of the land, were bound to ascertain, and, in an action like the present, are required to offer sufficient proof showing, that the power was properly exercised. Williams v. Peyton, 4 Wheat. 77, 4 L. Ed. 518; Morrill v. Cone, 22 How. 75, 82, 16 L. Ed. 253; Ransom v. Williams, 2 Wall. 313, 319, 17 L. Ed. 803;

Deputron v. Young, 134 U. S. 241, 256, 257, 10 Sup. Ct. 539, 33 L. Ed. 923; Pettis Co. v. Gibson, 73 Mo. 502.

We conclude, therefore, as above intimated, that the interests of the plaintiffs below were not devested by the attempted sale to Austin; and this is true as respects the interest of one of the plaintiffs, Joel T. Arnold, for another and entirely different reason. He became of full age on March 11, 1860, nearly two years before the trade with Austin was negotiated. As the power of the general assembly to authorize the sale of the children's interests depended solely upon the fact that they were minors, this power, when conferred, only continued so long as they were under age, and terminated when they respectively attained their majority, if it had not theretofore been exercised. The power to sell Joel T. Arnold's interest in the land expired, therefore, on March 11, 1860, when he became sui juris. Clusky v. Burns, 120 Mo. 567, 574, 25 S. W. 585.

The question which remains to be considered concerns the amount of the recovery. Only two of the children of Mrs. Arnold have joined in the present action, and, as the extent of their interest in the land depends upon whether the children of Mrs. Arnold took vested or contingent remainders under the deed of Joel Turnham, it is necessary to consider that question. This is, perhaps, the most disputable question in the case. The effect to be given to the deed of Joel Turnham, dated January 17, 1855, depends on section 5, c. 32, Rev. St. Mo. 1855, supra, which was in force at the time of its execution, and is the section applicable to its interpretation. The statute of Missouri abolishing entails appears to have been construed first in Farrar v. Christy's Adm'rs, 24 Mo. 453, and underwent at that time careful consideration. In that case separate tracts of land were conveyed by the same instrument to each of two brothers. The conveyance was "upon condition that, should either of the grantees herein named die without leaving legal heirs of their body, the survivor shall inherit the whole of the property hereby conveyed." It was held that at common law each of the brothers would have been seised in fee tail of the tract conveyed to him, but that the operation of the statute abolishing entails (Rev. Laws 1825, p. 216) was to cut down the estate of each brother in the tract assigned to him to a life estate, and that the other brother immediately took the remainder thereof in fee, which was subject to be devested, on the birth of issue to him who had the life estate. The court said that on the execution of the deed the whole estate passed at once from the grantors in fee, each brother taking a remainder in fee in the land of the other brother, which was only subject to be defeated on the birth of issue. The authority of that case as a construction of the statute abolishing entails has never been denied, and the statute as then written is not so far different from section 5, c. 32, Rev. St. 1855, as to warrant a different interpretation. In Clarkson v. Clarkson, 125 Mo. 381, 386, 28 S. W. 446, the conveyance was to the grantee "and his bodily heirs." It was held that this language created an estate tail, which was operated on by section 5, c. 32, Rev. St. 1855; the effect being to give to the grantee a life estate, and a "remainder in fee to his children." To the same effect was the case of Phillips v. La Forge, 89 Mo. 72, 1 S. W. 220.

So, also, in Waddell v. Waddell, 99 Mo. 338, 12 S. W. 349, 17 Am. St. Rep. 575, where the conveyance gave to the grantee a life estate, and provided that on the death of the grantee the title should "go and vest in the children * * * [of the grantee] equally to be divided * * * as tenants in common," it was held that this gave to the children living at the date of the conveyance a vested remainder in fee, which would open up and let in after-born children, if there were any. This latter decision is in strict accordance with a well-established doctrine of the common law,—that where there is a devise or conveyance of a remainder to a class (as, for example, to children), all of whom are equally the object of the testator's bounty, the remainder so created is regarded as vested, although all of the persons who are to take or who may take are not in esse. If other children are born before the estate takes effect in possession, it opens and lets them in. 2 Washb. Real Prop. (5th Ed.) p. 599; Tied. Real Prop. § 402, and cases there cited. Now, the deed of Joel Turnham, read in the light of the statute, gave the land in controversy to Mrs. Arnold for and during her natural life, and upon her death to her children, as tenants in common. Mrs. Arnold had seven children at the date of the conveyance, and never had any more, so that the remainder, as it first took effect, was never disturbed. It is true that the statute says that "upon the death of such grantee the said lands and tenements shall go and be vested in the children of such grantee," but in view of the local decisions on the question, and the general rule of law last above referred to, it cannot be held that this language means that the estate shall not become vested in interest in the children (that is, in the remainder-men) until the death of the first taker, and hence that the remainder created by the operation of the statute is a contingent remainder. On the contrary, the statute simply postpones the children's right of possession or enjoyment until the life estate ends. In the meantime they have a vested interest. There is only one local decision which seems to be relied upon to show that the children of Mrs. Arnold took contingent, rather than vested, remainders under the deed of Joel Turnham, and that is Emmerson v. Hughes, 110 Mo. 627, 19 S. W. 979. A careful examination of that case satisfies us, however, that, when properly interpreted, it contains nothing in opposition to the views heretofore expressed. The conveyance in that case expressly limited the estate of the first taker to a life estate, with a remainder "to the heirs of her body"; and the court held that, as the word "heirs" did not necessarily mean "children," it would apply the old rule that the heir cannot be known until the death of the ancestor, and hence that the remainder was contingent until the termination of the life estate. Besides, the court in that case treated the conveyance as governed by section 8838 of the Revised Statutes of 1889, which was enacted to abolish the rule in Shelley's Case, rather than by the statute abolishing entails, which is plainly the statute which is applicable to the decision of the case at bar. We conclude, therefore, that Mrs. Arnold's children took vested remainders in the land in controversy under the deed of Joel Turnham.

It results from what has been said that the plaintiffs below each took an undivided one-seventh part of the land in controversy under

the deed of Joel Turnham, and as their brothers, Robert H. Arnold, Charles B. Arnold, and Edward C. Arnold, took like vested interests, and died childless and intestate prior to Mrs. Arnold's death, the plaintiffs inherited a part of the interests of those brothers, as did their mother. We are of opinion that the part so inherited by the mother from her deceased sons inured to the advantage of the defendants by virtue of her warranty deed to Austin of date June 2, 1862. A calculation which we have made shows that, including the interest in the land which the plaintiffs took by inheritance from their deceased brothers, they are not respectively entitled to recover an undivided one-fourth interest, and in that respect only the judgment below was erroneous. The calculation which we have made shows that each plaintiff is entitled to recover $8/35$ of the land, but as we may have made some error in the calculation, and as it can be made from the agreed facts without the necessity of hearing further testimony, we deem it proper to remit the record to the lower court, so that the computation may be carefully gone over, with directions to modify the existing judgment by allowing to each of the plaintiffs below, in addition to his undivided one-seventh interest, the interests which they respectively inherited from their deceased brothers.

As thus modified, the judgment below is affirmed.