## ROLLINS, Appellant, v. McKINNEY.

### Division One, June 30, 1900.

Elections: STAMPING NAME OF CANDIDATE ON BALLOT. The stamping by the judges of election, by the use of rubber stamps, of the name of a candidate for office on the ticket of a party of which he is the supposed nominee, when his name has been properly omitted by the county clerk from the ticket, because no certificate of his nomination has been filed with said clerk, changes the ticket from a legal to an illegal one, and such tickets can not be counted for the person whose name is thus stamped thereon.

Rollins v. McKinney.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott,* Judge.

REVERSED AND REMANDED.

*Strother & Strother* for appellant.

(1) The real error committed was in the court's counting eighteen or nineteen of the official ballots which had been properly made out by the county clerk, but were changed after leaving his hands so that they were no longer official ballots when cast. The statute made them fraudulent *per se,* and said they "shall not be cast or counted in any election." R. S. 1889, sec. 4772; Bowers v. Smith, 111 Mo. 54, par. 1, p. 60, par. 2; Hope v. Flentge, 140 Mo. 399; Langford v. Gebhart, 130 Mo. 640; Teebe v. Smith, 29 L. R. A. 677; Atty.-Gen. v. May, 25 L. R. A. 325. (2) The stipulation filed herein at page — admits that McKinney was not nominated by any of the three ways provided by the statute, to-wit: 1st, by convention of delegates; 2d, by primary election; 3d, or by petition of electors. R. S. 1889, secs. 4754, 4760, 4761, 4763; Atkeson v. Lay, 115 Mo. 550. (3) The county clerk did his duty in not putting the name of George A. McKinney on the official ballot, as the same was not upon the certificate of nomination filed in his office by the Republican or any other party. If there was a mistake, which there was not, the law provides a remedy. R. S. 1889, sec. 4778. And by the failure of McKinney to take advantage of this law, he waived any remedy he might have had. Bowers v. Smith, 111 Mo. 55.

*W. G. Marshall* for respondent.

The stamped ballots were properly counted for contestee. They expressed the free choice of the persons voting them,

Rollins v. McKinney.

and there was no fraud or attempt at fraud in the stamping. This all appears conclusively from the record. If the election commissioners had refused these ballots, they would simply have disfranchised every voter that cast one of them, and have deprived every candidate whose name appeared on the ballots of so many votes. The ballots were good or they were bad, and contestant can not limit the effect of the exclusion of the ballots (which he seeks to the disfranchisement of the voter) as to one candidate, the contestee, or the loss of votes to one candidate. These ballots were counted and cast up by the judges and clerks of election, and as no fraud is shown or connected with the election or casting of said votes, they were properly counted by the county clerk. Bower v. Smith, 111 Mo. 45; Atkinson v. Lay, 115 Mo. 556. Section 4772 only prohibits the voter from furnishing his own ballot and confines him to the one furnished by the State, to the end that uniformity may prevail in the appearance of all the paper ballots cast. This section (4772) did not prohibit the stamping of the name of the contestee in these ballots because it is specifically provided by the law that space shall be left, and it is always left in the ballots for the insertion of other names to be voted for. This section does not render these ballots fraudulent and prohibit them from being counted, because contestee's name was stamped in them by one of the judges of the election under the circumstances detailed in this case, for two reasons: 1st. The statute provides that a judge of election, shall, and makes it his duty to, prepare ballots for voters, and while it provides that he shall do so under certain conditions and observe certain forms, the law does not provide that absence of the conditions or failure to observe the certain forms upon the part of the judge will prevent the ballot from being counted, or deprive the voter casting it of the right of suffrage. Sec. 4784, R. S. 1889; Bower v. Smith, *supra.* 2d. While

the judges of the election in this case performed the physical act of stamping, the evidence shows conclusively that the voters of these ballots and each of them made the stamping their own act by taking the ballots to the booth and preparing them and returning and depositing them as prepared. This complied with the very letter and spirit of the statute (sec. 4781).

BRACE, P. J.—The finding of the circuit court and an extract from the statement of facts agreed upon, furnish a satisfactory statement of the case. They are as follows:

### Finding.

"This is a contest over the election of constable for the Eighth constabulary district, Kaw township, Jackson county, Missouri. At the time of the election (November, 1898) the district embraced the 7th, 13th and 14th wards of Kansas City, and that portion of the township outside the city limits known as Round Top, Manchester and East Bottoms precincts. Andrew T. Rollins was the Democratic candidate. His nomination was duly certified to the clerk of the county court, and his name printed on the official ballots for all the precincts in said district. George A. McKinney was the Republican candidate. He was duly nominated by the Republican primary electors, at a primary held in the city for that purpose; his name was properly certified and printed on the official ballots for the 7th, 13th and 14th wards in the city. If he was ever nominated by the voters for outside precincts his nomination was never certified to the clerk of the county court, and his name was not printed on the official ballots of the outside precincts. The clerk of the county court faithfully discharged his duty and caused the official ballots to be printed in strict conformity to the law. There was some parol testimony introduced by contestee to show

that there was an attempt to nominate him for the outside precincts. This evidence was improperly admitted and is now excluded. There was also a stipulation by parties to contest filed, admitting that all the voters, judges and clerks in the Round Top, Manchester and East Bottoms precincts would testify that he was not nominated. The county clerk left a blank space for the name of the candidate for constable on the official Republican ballots sent to the three precincts in Kaw township outside of Kansas City. When the official ballots were published, George A. McKinney discovered that his name was not printed on the ballots for Round Top, Manchester and East Bottoms precincts. He testified that under the direction of the county attorney (who had no authority to direct him in regard to this transaction) he caused his name to be made on three rubber stamps. He left one of these stamps with the election judges at each of the outside precincts. The election judges (before the ballots were delivered to the electors) stamped in red ink the name "George A. McKinney" in the blank space left for the name of the candidate for constable on the official Republican ballots used at the three outside precincts. His name was properly and legally printed on the official ballots used at all of the other precincts in said district. Eighteen of the stamped ballots were voted and counted for McKinney. On one of these ballots the stamped name was erased and the name of Andrew T. Rollins written above it. This ballot was counted for contestant Rollins. After this contest was instituted a recount of the ballots was ordered by the county court. According to the recount, George A. McKinney was elected by fourteen majority. He qualified and since that time has been acting as constable. A large number of ballots were voted and counted, on the backs of which the names or initials of but one of the election judges appears. A large number of duplicate and triplicate ballots were voted and

counted.  I have gone through the record of this recount.  If we exclude all of the ballots that show the name or initials of only one of the election judges, and exclude the eighteen stamped ballots voted for McKinney, the finding must be for contestee McKinney; if we exclude all of the duplicate and triplicate ballots cast and counted for both parties, and exclude the stamped ballots, the finding will be for McKinney, for there were many more duplicate and triplicate ballots cast and counted for Rollins than for McKinney.  If we count all of the ballots that show the names or initials of only one of the election judges and count all the duplicate and triplicate ballots, and exclude the eighteen ballots cast and counted for McKinney, contestant Rollins has a majority of twelve votes.  I can not see how a court can determine whether a duplicate or triplicate ballot was fraudulent, or cast or counted in good faith.  I am very much in doubt as to the legality of these ballots, but have concluded that under the law applicable to elections held in cities of the population of Kansas City, the commissioner did right in counting these ballots.  I have reached the same conclusion as to the ballots that failed to have the names or initials of but one of the judges written on the backs thereof.  I have also concluded that the eighteen stamped ballots cast for contestee, George A. McKinney, should be counted.  This result shows that contestee was elected by fourteen majority.  There was no fraud or deception practiced on the electors who cast these ballots.  The evidence shows that the ballots were received in good faith from the judges of election.  The finding and judgment of the court is for contestee, George A. McKinney."

### Stipulation.

"3d.  That the county clerk in printing the ballots to be sent to the above precincts did not have the name of

George A. McKinney printed on said ballots which was
headed as the 'Republican Ticket,' but left the space under
the head of 'for constable for Eighth Dist.' a blank, and the
same did not contain the name of George A. McKinney
printed on the same when they reached or were delivered to
the judges or clerks of the election in the above precincts; that
upon receipt of the ballots the judges and clerks were fur-
nished with a rubber stamp by George A. McKinney, with
the name of George A. McKinney on the same, and with said
rubber stamp some of the judges or clerks of the election
stamped a portion of the Republican ballots by printing with
said rubber stamp the name of George A. McKinney on said
Republican ballots under the title of 'for constable of Eighth
Dist.' in the blank space thereunder.

"4th.   That said Republican ballots thus stamped by
said judges or clerks of election with the name of George A.
McKinney under the head of 'for constable Eighth Dist.' in
the blank space thereunder, after being initialed by the judges
of the election, were handed to the voters and with knowledge
on the part of said voters of the fact that George A. Mc-
Kinney's name was stamped or printed in red ink on said
Republican ballots, and that none of the voters had previously
requested that said McKinney's name be stamped or printed
on said Republican ballots before or after said Republican
ballots were handed to them by the said judges of election in
said precincts; that none of the voters who voted the ballot
so stamped or printed with said McKinney's name thereon
were unable to read or write or were by physical disabilities
unable to mark his or their ballot under oath or otherwise;
that when said judges delivered the ballots so stamped or
printed with red ink with the name of George A. McKinney
as aforesaid to the different voters, said voters thereupon went
over to the booths with said stamped or printed ballots as
hereinbefore described, and then returned the same to the

judges of election to the number of eighteen or nineteen, as shown by the testimony of the certificate of recount of said ballots by the county clerk; that the said judges of election after numbering said ballots deposited the same in the ballot boxes and counted them for said George A. McKinney."

(1) Judgment was rendered for the contestee on the finding, and in due time, Rollins, the contestant, filed motions for new trial and in arrest of judgment, which being overruled, he appealed to this court, and assigns for error the counting of the eighteen stamped ballots for contestee, who did not appeal from the rulings of the court adverse to him, and on the record the only question in the case for our determination is, whether under the statute these eighteen ballots ought to have been counted for contestee. [Callaway Co. v. Henderson, 119 Mo. 32; Clarkson v. Clarkson, 125 Mo. 381.]

The statute requires that "all ballots cast in elections for public officers within this State shall be printed and distributed at public expense" (R. S. 1899, sec. 7077), prescribes the methods of nomination and certification thereof by which the names of candidates become entitled to be placed upon the ballots (sec. 7078, et seq.), and then provides (sec. 7095), "It shall be the duty of the clerk of the county court of each county to provide printed ballots for every election for public officers in which the electors within his county participate, and to cause to be printed in the appropriate ballot, the name of every candidate whose name has been certified to or filed with him in the manner provided for in this article. Ballots other than those printed by the respective clerks of the county courts according to the provisions of this article shall not be cast or counted."

"Sec. 7096. Every ballot printed under the provisions of this article shall be headed by the name of the political party by whom the candidates whose names appear on the ballots were nominated, and each of said ballots shall contain

only the names of the candidates nominated by said party. Underneath the name of each candidate shall be left a blank space large enough to contain a written name."

The statute then provides for the distribution of these printed ballots, and a delivery by the clerk of a sufficient number of them to the judges of each election district within his county before the opening of the polls on the day of the election, whose duty it shall be, after such ballots shall have been indorsed with the initials of two of their number, to deliver to each qualified voter desiring to vote, one of the ballots of each political party, so printed and received by them. [Sec. 7098 et seq.] The statute then provides: "On receipt of his ballots the elector shall forthwith and without leaving the polling place retire alone to one of the places, booths or compartments provided, to prepare his ballot. He shall prepare his ballot by selecting the ballot he desires to vote. He shall erase or strike out the name of any candidate he does not wish to vote for and write the name of his choice underneath. After preparing his ballot the elector shall fold the same so that the face of the ballot shall be concealed and the initials of the judges may be seen. He shall also fold the other ballots given him so that their faces are concealed and so that the initials of the judges may be seen. He shall then hand the ballot he desires to vote to the judge of the election selected to take the ballots, who shall number the ballot and deposit it in the ballot box." [Sec. 7105.]

(2)   The foregoing are the provisions which bear, directly upon, and by which the question in hand is to be determined upon the admitted facts in the case, to which our decision must be limited. On the conceded facts, these eighteen ballots may in fact have expressed the choice of the electors who cast them, for the office in contest. But unless they were the ballots intended by the statute to be cast for that office at that election they did not legally manifest that

choice, could not have been legally cast, and can not be counted, for the statute expressly forbids the casting or counting of any ballots other than those intended by the statute. The ballots prepared and printed by the clerk as required by the statute and which were to be voted at this election for the office of constable of the "Eighth district of Kaw township," were duly delivered to the judges of election. But the eighteen ballots in question cast for that office, were not the ballots which the judges of the election received, and which the statute required should by them be delivered to the electors and by them be cast for that office. The statutory ballot for that office was a blank space on the Republican ticket, under the title of the office, in which the elector might write the name of his choice for that office, and by which he was advised of the fact that there was no nominee of that party for that office at that election. In that space on the eighteen Republican tickets delivered to the electors, and by them cast in this instance, the judges before delivery had stamped the name of the contestee; thus falsely giving him the position of a nominee of that party for that office to which he was in no way entitled. And it is these false ballots for that office, manufactured by the judges of the election, without any authority of law, and in flagrant violation of their official duties, that were counted for the contestee in the court below. These were certainly ballots other than those printed according to the provisions of the statute, the casting and counting of which is thereby expressly prohibited, and the court in counting them for the contestee committed error for which its judgment will be reversed and the cause remanded for new trial.

All concur.